Gaston, J.
 

 The best definition which can be given of usury, will be found in the words of the statute by which it is prohibited : “No person or persons whatsoever, upon any contract, shall directly or indirectly take for the loan of any moneys, wares, merchandizes or 'commodities whatsoever, above the value of six dollars by way of discount or interest for the forbearance of one hundred dollars for one year, and so after that rate for a greater or lesser sum, or for a longer or shorter time, and all bonds, contracts and assurances whatever for the payment ol any principal or money to be lent or covenanted to be performed upon any usury, whereupon or whereby there shall be reserved or taken above the rate of six dollars in the hundred as aforesaid, shall be utterly void.” Usury consists then in taking directly or indirectly, upon a loan of money or commodities, either by way of discount or interest, above the value of six dollars for the forbearance of one hundred dollars for one year, or that rate for a greater or less sum. or for a longer or shorter time. It follows then, that the test proper to be applied to the loan, which in this case is alleged to be usurious, is whether it was made upon an agreement to render therefor a higher rate of compensation than the statute sanctions. Now if the agreement was, that the borrowers should receive the amount lent, after deduction of the discount, in notes known to be depreciated at their nominal value, and at the expiration of the term should repay that amount in lawful money, or in a currency less depreciated than that in which it was advanced, without
 
 *529
 
 further explanation, an assurance to cany that into execution would be usurious, it is manifest, that by that assurance there is reserved to the lender, after taking out the legal discount, the difference between the actual value of what was lent and what is to be returned. This is prohibited gain. If upon a loan it is agreed, that the borrower shall be paid in bills at a premium, which they actually command in the market, all will admit that, in this, there would be no usury, and it must follow, that if he be required to take it in bills at par, which are then at a discount, this must be usury. Whatever may be the motives which induced the Legislature to regulate the value of the use of money, and by'severe penalties to prohibit all bargains for its use at a higher price, the standard of this value is the gaiu taken by, or reserved to the lender, not the price paid or to be paid by the borrower. Accordingly, we cannot doubt, if it was a part of the consideration for a loan, that, in addition to the principal and lawful interest to be paid by the borrower, a stranger should allow a gratuity to the lender, such loan would be usurious under the statute.— The proper subject of enquiry is, what is the lender to receive, and not always what the borrower is to pay, for the forbearance. Where the entire gain of the lender is derived from the borrower, the profit of the former and the loss of the latter, are necessarily commensurate. But it is always safer to apply, when we can, the standard given by the law, than to make use of any other, however exactly in general it may appear to correspond therewith.
 

 In this case it seems to us, that his Honor, after laying down very accurately the general rules of law applicable to it, in considering the explanations, by which the agreement was sought tobe rescued from the imputation of usury, has permitted his intelligent mind to be perplexed and finally led into errror by an unnecessary enquiry about the loss of the borrowers. And having arrived at the conclusion, that, in consequence of the use to which the money.borrowed was applied, théy had not subjected themselves to a loss upon
 
 *530
 
 the loan greater than at the rate of six per centum per an-num, he was of opinion that the assurance was not tainted with usury, although the lender was thereby to receive more ^an compensation for forbearance fixed by law. That error, we think, was occasioned by not regarding the loss as determined
 
 by the
 
 agreement, but as ascertained by combining therewith the gain of the borrowers in their disposition of the money lent. Upon these combined transactions, they may not have finally lost the premium allowed upon the depreciated notes, but, if it be so, it is because their creditors have consented to allow it. They did lose more than the lawful interest by the agreement, bu t they were enabled to throw off this loss upon others.
 

 If the depreciated notes — depreciated in the money market or even with all other persons, had been to the borrowers
 
 intrinsically
 
 worth the value, at which they were received, then there would have been no usury in requiring that they should be received at that value. It might have been fortunate for the holder to meet with a person to whom these notes were
 
 as cash,
 
 but, if they were, then in effect there was a loan oí the
 
 money
 
 which the notes called for, and six per centum per annum interest • thereon, would not have been a greater gain on such loan than the law authorized.— Such a case might be put; as if the borrowers had been permitted to deposit, as cash, Virginia notes to that amount, on a promise to take them back at the same rate, or were under any other valid obligation to redeem them. And perhaps there are others, but it will be sufficient to-state these as illustrations of this position. It is very probable that neither the borrowers nor the lender had an actual intent to violate the statute against usury, and it is not unlikely that the loan, as made, tinder the then pressure of the times and embarrassments of the banks, was not only prompted by commendable public motives, but in truth also an act of favor to the borrowers. But if, by the agreement, it was intended to obtain in fact a greater compensation for the money lent than the statute allows, the law pronounces the agreement cor.
 
 *531
 
 rapt, whatever misapprehensions might have prevailed as to the construction of the statute, or however free the agreement from every taint of moral turpitude. This may be hard, but
 
 sic lex scripta
 
 est, and we must obey it.
 

 The court is of opinion, that there was error in the instructions given to the jury, and that the judgment must be reversed aud a new trial awarded.
 

 Per Curiam. New trial awarded.