Ruffin, C. J.
 

 The Court has sought to discover some ground, on which this caso can, be distinguished from what it was, when here before in the name of the Cashier, Mr. Ehrignhaus, against the same defendant. 3 Ired. 522. But there does not appear to us to be any difference. The facts are substantially the same, and the legal result must also be the same.
 

 There was a loan of $2000 to Williams in the notes of the Bank of Virginia, when notoriously depreciated at the place where the loan was made; and it was made a condition of the loan, that the borrower should receive the proceeds of his note in those notes, as if they were at par, and should pay his note at maturity in North Carolina bank notes, then at an average value above Virginia notes of 3 per cent. That agreement has hitherto been held by this court to be usurious; because, to ■.the extent .of the depreciation; the lender had a gain over and
 
 *697
 
 above the lawful rate of interest, and got upon a 90 days note 4| instead of 1| per cent.
 

 The judge, who presided at the first trial, thought, as the borrower said, “ he was willing to take Yirginia bills, as they would answer to pay debts at the then1 nominal amount, for which purpose he wanted them,” and as witnesses stated that they did pass at their numerical value in payment of some debts, that there was no unlawful gain made out of the borrower ; therefore, that the contract was not usurious. ' But we were of opinion, that the use, to which the notes were actually applied by the borrower, could not change the character of the agreement — which last was the criterion for determining, whether there was usury or not.
 
 By the agreement
 
 the lender unlawfully gained 3 per cent, besides interest for the time, and the borrower lost that
 
 by the
 
 agreement; and that could not be altered by the borrower subsequently throwing the loss on some one else. For the future disposition of them could have no influence in determining, whether the borrower was compelled
 
 to give the lender
 
 above the rate of 6 per cent: at all events, unless some particular mode of application of the notes was in the contemplation of the parties by which they would certainly answer the borrower
 
 all
 
 the purposes of cash, or the lender engaged
 
 as a part of the agreement, to make them worth to the borrower
 
 as much as he took them at.
 

 His Honor, who presided at the last trial, admitted the general principle, that lending depreciated bills upon an agreement for the repayment in bills not depreciated — nothing else appearing — is usurious-. But the Cashier stated, that, when the borrower was urging for the loan and the Cashier was objecting, on account of the condition of the bank and the danger of issuing its own notes, the borrower said, “ Yirginia bills would be as good to him as North Carolina bills” — omitting now, what was stated before, that the borrower gave, as the reason why they would be as good, that he wanted them to pay debts, and they would answer that purpose. In other respects, the two statements are the same. Upon this evidence
 
 *698
 
 it was loft to the jury to find, that the Virginia bills were in-tnnsically worth to Williams as much as the same nominal amount in cash or North Carolina notes, with instructions, that, if they should so find, then, though the bills were at a discount with all other persons, the loan was not usurious. Those instructions are, we think, erroneous.
 

 If there be blame upon any one for the error, this court must take to itself a due share of it; as, probably, the terms, in which the directions to the jury were expressed, were taken from the opinion given in the former suit. After deciding the point in that case, that the contract as there stated, was usurious, Judge Gaston proceeded further to state, that possibly there might be instances, in which the lending of depreciated bank notes would not be usurious; and he then uses the language, adopted by his Honor, “ that if the notes, though depreciated in the money market, or even with all other persons, had been to the borrower intrinsically worth the value at which they were received, then there would be no usury.” It. is to be observed, that this was an
 
 obiter dictum,
 
 and we must say, that, like most others, it was not duly considered by us or the distinguished judge from whom it fell, and who was generally so clear in his perceptions and choice in his words, as to reason accurately and express himself with uncommon precision. But it is obvious, that the term “intrinsically” is not used in its proper sense, and, in context with the admission, that the Virginia notes were at a discount with all other persons, the whole position is not very intelligible. The “ intrinsic value” of a thing is its true, inherent, and essential value, not depending upon accident, place, or person, but the same every where and to every one. Bank notes have, indeed, no intrinsic value. They only represent value, by being the promise to pay money (which has intrinsic value) by persons of undoubted ability or credit; which induces the world' to take them in the stead and at the value of money. They are as good as money, though without its intrinsic value ; because' money can be had for them when the holder will, and they pass as money. But that is in no sense (rue,
 
 *699
 
 with respect to the notes of banks, that will not redeem them, or which, from any cause, do not pass os money, that is, so much current coin as is mentioned in them. They are then not only without intrinsic value, but they do not represent that which has such value, namely, as much money as they purport to promise. And when t! intrinsic” is used in reference to persons, as it was in this case, it is misapplied in a way that misleads; for, when
 
 a
 
 note is at a discount in the market, and “ all persons” refuse to buy it or to take it at
 
 par
 
 but one, and that one receives it at par, by way of loan, made upon the condition, that he shall so receive it, we cannot say, that the “instrinsic value” of the note is thereby affected; but the fact merely is, that such single person was willing, in order to get the use of the note, to take it at more than all other people would, and more than its true value. If, indeed, the Bank says to the borrower, although we cannot lend you cash, nor our own notes payable here, on which you may immediately demand cash, and, therefore, cannot make the loan you desire, unless you will take it in foreign depreciated notes; but the depreciation shall not be your loss, but ours; then we agree there is no usury. As if the lender agree to receive from the borrower the same kind of notes in payment of this or any other debts, or in deposit, as cash. There the gain and loss of the parties would be equalized by the two parts of the transaction. Or if the borrower inform the lender, that he wishes to pay a debt at the place where the bank notes are payable, and the lender
 
 engages
 
 that they shall be there worth to the borrower their numerical amount in cash, the same consequence would follow; the risk of loss being that of the lender, there could be no unlawful gain made by the lender from the borrower. But when the whole risk is left on the borrower by the terms of the contract, the imposition of the depreciated notes on him, as good money, will npt lose its character of usury, by the borrower’s
 
 saying
 
 that they
 
 would be
 
 as good as money to him. To have that effect, the fact, that they were as good as money to him, ought to be shewn, if, indeed, in the nature of things, that be possible; or it ought
 
 *700
 
 appear, that it formed
 
 apart of the contract,
 
 that the bank make them as good, if they should turn out not to beso, In any other sense than this; the “intrinsic value” of the notes to Williams can only mean, that he
 
 used
 
 them at their nominal amount in certain transactions, and not that they were worth that amount. . Now, that takes us back precisely to the error committed in the first trial, by endeavoring to search for evidence of the actual loss or gain to the borrower, instead of abiding by the gain or loss of the lender,
 
 as contracted for.
 
 Except in this last sense, there is no evidence on which the jury could find the value, intrinsic or nominal, of the notes to the borrower. . He may not have lost on the transaction ; for perhaps he bought property with them at half its value, or may have lent them to some one else at
 
 par
 
 and a still higher rate of interest. But with money he could have done still better by the difference in the value; because with money he could have bought these notes at their depreciation, and then with them made his other bargains. But such advantageous dispositions of them are his own acts and at his own risk, altogether distinct from the original contract of lending and borrowing, in which the lender made no engagement to bear the loss, but imposed it on the borrower. By
 
 that contract
 
 the lender got clear of the notes, knowingly reserving for the loan of them more than the lawful rate of interest; and thereby is its validity to be determined. It would be exceedingly dangerous, and break down all the guards provided by the legislature for the protection of the needy against their own weakness in a time of distress, and against the exactions of mony lenders, if a bank were allowed thus to bargain with men, who are often ready to raise money, on almost any terms, to meet present emergencies. They always say, and it may be, often think, they can make an advantageous use of the-money, though obtained on hard terms. But the legislature has said, that the terms shall by no shift or device exceed a certain rate, or else the contract shall be void : and our duty is to administer the law with an even hand, against, as well as for, lenders.
 

 
 *701
 
 We have not overlooked the statement of the Cashier, “ that the Virginia bills were worth as much as the North Carolina bills to the bank, as it wished to ,use them to meet the probable demands of the Virginia banks on the resumption of specie payments, which took place on the 1st of May, 1842.” At first view that struck irs as a singular statement, when it appeared from the Cashier, that he had large balances against the Virginia banks, on which they would not pay in--terest, and that, so far from those notes being as good as our' own, the bank had refused to take them either in general de--posit or payment; and that they could be purchased in market for their own notes at an average discount of 3 per cent,But we cannot suppose the witness meant thus to contradict' the acts of his bank and his own statements; and therefore' we cannot, understand him to say, that the Virginia notes-were,
 
 at the time of this loan,
 
 worth as much to the bank as-the North Carolina notes. But we must understand him, consistently with himself, to have meant, that, if the bank kept the Virginia notes from that time (about the last of February)' until the 1st of May following,- and the banks of Virginia should then resume specie payments, they would
 
 then
 
 be worth as much as the North Carolina notes. But, besides-the uncertainty of the event of resumption, the delay itself, of two months, made- a difference of one per cent.- whioh was gained by lending them out. Indeed, disguise it as we may, every attempt by a bank to put upon a borrower bank bills, not its own and below par at that time and place, is
 
 prima facie
 
 usurious and, as it seems to us, is conclusively so, if the bank does not by the contract engage to make them good as cash, and requires repayment in a different' and better medium. We,are not aware of any other means of making such a contract consistent with the law. Here the case states, that the lender required the borrower to accept these notes at par, and expressly refused to take them back at the same rate, and’ there was no obligation on the lender to make them of the full numerical value to the borrower, but he was to get them off on the best terms he could' in the market, and the lender
 
 *702
 
 at the same time required payment in a medium Worth one hundred cents in the dollar. It is clear, the bank could not lose, but must gain the amount of depreciation, besides the discount: which is usury. There was no evidence on which it could be left to the jury to say, that the notes were of greater value to Williams than the market value; and it was erroneous to give the instruction founded on that hypothesis.
 

 PeR OuniAMj Judgment reversed and
 
 venire de novo.