PLANTERS NATIONAL BANK OF VIRGINIA v. WYSONG & MILES
COMPANY ET ALS.

(Filed 7 May, 1919.)

**1. Usury—Banks and Banking—Deposits.**

Where a bank has contracted with a borrower that in consideration of
the loan the latter should keep a certain sum of the money deposited in
the bank, beyond his control, and charges and receives in advance the
full rate of interest on the entire amount, the transaction is an usurious
one.

**2. Usury.**

The elements of usury are defined to be a loan or forbearance of
money, either express or implied, upon an understanding that the prin-
cipal shall or may be returned, and a greater profit than is authorized
by law shall be paid, where the transaction is entered into with the
intent to violate the law, which intent may be implied if all the other
elements of usury are expressed upon the face of the instrument or
established by sufficient evidence.

**3. Usury—Pleadings—Counterclaim—Banks and Banking—National Law—
Interpretation—Courts—Federal Courts.**

While the State court has concurrent jurisdiction with the Federal
court in an action brought upon a note by a national bank, and also of
the question of usury involved in the transaction, if any, the pleading
and procedure required expressly by the Federal statute, as interpreted
by the decisions of the Supreme Court of the United States, to recover
the penalty must be followed, and the interpretation of the statute by
that Court will prevail over a contrary one by the State court, and over
a State statute relating to the subject; and, therefore, where usurious
interest has been actually received by a national bank for a loan, it is
required that the maker of the note bring an independent action to
recover double the amount of the interest paid and received, which is
allowed by the statute as a penalty, and the penalty may not be set up
as a counterclaim in the action brought by the national bank in the State
court to recover on the note.

**4. Pleadings—Statutes—Federal Statutes—Interpretation—Courts—Federal
Courts.**

The local or State law as to pleadings and procedure ordinarily per-
mitted and allowed by the Federal courts to control in actions in the
State courts involving Federal questions, cannot be extended so as to
include instances wherein a particular method is specially prescribed
by the Federal law, as interpreted by the United States Supreme Court,
although this interpretation may be at variance with the decisions of
the State courts upon the same statute or a similar enactment by the
Legislature of the State.

ACTION tried before *Lane, J.,* at February Term, 1919, of GUILFORD.

The action was brought by the plaintiff, a national bank, to recover
of the defendants the amount of three promissory notes aggregating ten
thousand three hundred and forty-nine and fifty-four hundredths dol-

lars ($10,349.54), one dated 10 September, 1917, for four thousand three hundred and forty-nine and fifty-four hundredths dollars ($4,349.54), and due on 15 January, 1918; another dated 24 September, 1917, for one thousand dollars ($1,000), due 15 January, 1918; and a third, 8 October, 1917, for five thousand dollars ($5,000), due on 15 January, 1918. These several notes were payable at the office of the plaintiff in the city of Richmond, State of Virginia. Plaintiff sues for the recovery of the face value thereof with interest from maturity, to wit, 15 January, 1918, at the rate of 6 per cent per annum.

The material part of the pleadings is as follows:

The plaintiff, Planters National Bank, complaining of and concerning defendants, says:

1. That it was, on the dates hereinafter mentioned, and ever since has been, and still is, a corporation, created, organized and existing under and by virtue of the laws of the United States prescribed for the organization of national banks, and as such is engaged in banking, with its principal office and place of business in the city of Richmond, State of Virginia.

2. That the defendants are all residents of the county of Guilford, North Carolina.

3. That the defendant, Wysong & Miles Co., was, at the dates hereinafter mentioned, and ever since has been, and still is, a corporation, with its home office and place of business in the county and State first above named.

4. That on 10 September, 1917, the defendant, Wysong & Miles Co., for value received, executed and delivered unto this plaintiff, Planters National Bank, its writing obligatory, or note, whereby it promised to pay, on 15 January, 1918, to this plaintiff, Planters National Bank, or order, without offset, four thousand three hundred forty-nine and fifty-four hundredths dollars ($4,349.54), negotiable and payable at Planters National Bank, Richmond, Va.

5. That on 24 September, 1917, the defendant, Wysong & Miles Co., for value received, executed and delivered unto this plaintiff, Planters National Bank, its writing obligatory, or note, whereby it promised to pay, on 15 January, 1918, to this plaintiff, Planters National Bank, or order, without offset, one thousand dollars ($1,000), negotiable and payable at Planters National Bank, Richmond, Va.

6. That on 8 October, 1917, the defendant Wysong & Miles Co., for value received, executed and delivered unto this plaintiff, Planters National Bank, its writing obligatory or note whereby it promised to pay, on 15 January, 1918, to this plaintiff, Planters National Bank, or order, without offset five thousand dollars ($5,000) negotiable and payable at Planters National Bank, Richmond, Va.

7. O. C. Wysong and the defendants J. A. Kleemier and J. R. Brown all endorsed said writings obligatory, or notes, by writing their several and respective names on the back of the three several notes or writings obligatory before the same were negotiated or delivered to this plaintiff.

8. On each of said notes, or writings obligatory, and just above and over the signatures of the said Wysong, Kleemier, and Brown, the following entry is made: "The undersigned hereby waive demand, protest, notice of dishonor, and the benefit of the homestead exemption as to this debt." Said entry just quoted on each of said notes was on there before and at the time the said Wysong, Kleemier, and Brown endorsed said several notes, and was and still is a part of each of said notes or obligations.

9. O. C. Wysong died during the year 1918, while a resident of the county and State first above mentioned, leaving a last will and testament wherein he named the defendant, Fannie I. Wysong, as executrix thereof, and the said will and testament has been duly probated and recorded in the office of the clerk of the Superior Court for the State and county first above named, and said Fannie I. Wysong has been duly qualified as such executrix, and is now acting as such.

10. The maker of, and the endorsers upon, the three several notes or writings obligatory hereinbefore referred to, and all of them, failed to pay the said three sums and every part thereof, at maturity or at any other time, so that the said three sums hereinbefore mentioned, which total ten thousand three hundred forty-nine and fifty-four hundredths dollars ($10,349.54), are due and owing by these several defendants to this plaintiff, with interest on the full amount of the same, which total, as above stated, ten thousand three hundred forty-nine and fifty-four hundredths dollars ($10,349.54), with interest thereon from 15 January, 1918, till paid.

Then follows the prayer for judgment.

The defendants answered and counterclaimed, as follows:

1. The first paragraph of the complaint is admitted.

2. The second paragraph of the complaint is admitted.

3. The third paragraph of the complaint is admitted.

4. The allegations contained in the fourth paragraph of the complaint are admitted to be true, but the defendants allege that the note mentioned in said paragraph is one of a series of notes given by the defendant, the Wysong & Miles Co., to the plaintiff, as hereinafter set out in the second defense and counterclaim in this answer, and that the said note is usurious, and has been paid as alleged in said counterclaim.

5. The allegations contained in the fifth paragraph of the complaint are admitted to be true, but the defendants allege that the note mentioned in said paragraph is one of a series of notes given by the defend-

ant, the Wysong & Miles Co., to the plaintiff, as hereinafter set out in the second defense and counterclaim in this answer, and that the said note is usurious and has been paid as alleged in said counterclaim.

6. The allegations contained in the sixth paragraph of the complaint are admitted to be true, but the defendants allege that the note mentioned in said paragraph is one of a series of notes given by the defendant, the Wysong & Miles Co., to the plaintiff, as hereinafter set out in the second defense and counterclaim in this answer, and that the said note is usurious and has been paid as set out in said counterclaim.

7. The seventh paragraph of the complaint is admitted.

8. The eighth paragraph of the complaint is admitted.

9. The ninth paragraph of the complaint is admitted.

10. The allegations contained in the tenth paragraph of the complaint are not true.

Further answering, and for a second defense and counterclaim, the defendants allege:

That on or about 12 June, 1908, the defendant, the Wysong & Miles Co., commenced to borrow money from the plaintiff, and thereafter the said defendant, from time to time, and during a period of time extending from said 12 June, 1908, to 8 October, 1917, borrowed various sums of money from the plaintiff, and renewed the loans from time to time and about every three or four months during said period, by executing notes in renewal of former notes.

That the plaintiff, in each and every case, and out of each and every loan of money to the defendant, simply gave the latter a credit at the plaintiff's bank for the amount borrowed at any particular time, and permitted the defendant to check against such account to the extent of 80 per cent of the amount borrowed, and for which said defendant had executed its note to the plaintiff, and the plaintiff retained out of each loan to the defendant 20 per cent of the amount for which the defendant had given its note to the plaintiff; that in addition to retaining the 20 per cent on each loan, as aforesaid, the plaintiff reserved, charged and collected out of each and every loan made by the plaintiff to the defendant, in advance, the interest on the full amount of loan at the rate of 6 per cent per annum.

That each and every of said loans, and each and every of said notes in renewal, including the three notes sued on in this case and set out in the complaint, formed a part of a series of loans and notes given by the defendant to the plaintiff for such loans from time to time during the period of time from 12 June, 1908, to 8 October, 1917, and constituted one continuous transaction.

That the said defendant, the Wysong & Miles Co., on 12 June, 1908, borrowed from the plaintiff the sum of $5,000, at 6 per cent interest,

due three months from that date, but the plaintiff let the defendant have on said loan and on the note given for said loan only $4,000, and collected from the said defendant the interest on said sum of $5,000 at the rate of 6 per cent per annum.

That on 7 October, 1908, the defendant borrowed from the plaintiff the sum of $5,000 at 6 per cent, due in ninety days, and gave its note to the plaintiff for the sum of $5,000, but that plaintiff let the said defendant have on said note only the sum of $4,000, and charged and collected from the defendant the interest on the sum of $5,000 at 6 per cent.

That on 14 January, 1909, the defendant borrowed from the plaintiff the sum of $5,000, at 6 per cent, due in ninety days, and gave the plaintiff a note of the defendant for $5,000, but the plaintiff let the defendant have on said note only the sum of $4,000, and collected from the defendant the interest on $5,000 at 6 per cent.

That the said defendant, at various times and every few months during said period of time from 12 June, 1908, to 8 October, 1917, borrowed other large sums of money from the plaintiff, and gave the notes of the defendant for said sums of money as borrowed, but the plaintiff in each and every instance let the defendant have only 80 per cent of the amount agreed to be loaned and for which the defendant gave its note, the plaintiff reserving 20 per cent of each loan, and also charging interest at 6 per cent on the entire sum for which a note was given by said defendant.

That the defendants are unable to give in detail a list or statement of all of said notes and renewals, but the defendant, the Wysong & Miles Co., paid the plaintiff as interest on said notes the sum of seven thousand one hundred and sixty-one dollars and thirty-seven cents. ($7,161.37).

That the defendant gave to the plaintiff a large number of notes in renewal of former notes, and the notes sued on in this case are renewal notes.

That the sum of $7,161.37 paid by this defendant to the plaintiff is usurious and unlawful interest, knowingly charged and collected by the plaintiff from the said defendant.

Wherefore, the defendants demand judgment:

1. That the defendants recover of the plaintiff on the counterclaim set up in the answer twice the amount of interest paid to the plaintiff, to wit, the sum of $14,322.74, and also the amount of interest actually paid, to wit, the sum of $7,161.37.

For costs, and for such other and further relief as the defendant may be entitled to receive.

The plaintiff replied, denying all usury, and also denying circum-

stantially the existence of any transaction from which usury could be inferred. It further alleged that the contracts were made in Virginia, and were not usurious, and that the action was not commenced in time for the recovery of any penalty for the alleged usury.

The following verdict was returned by the jury:

1. Was there an agreement between the plaintiff and the defendant by which the defendant was to keep on deposit with the plaintiff 20 per cent of the loans made by the plaintiff to the defendant? Answer: "Yes."

2. What amount of interest has the defendant paid to the plaintiff on the loans mentioned in the pleadings? Answer: "$3,846.71."

3. Is the defendant's alleged cause of action barred by the statute of limitations? Answer: "No."

4. Is the defendant indebted to the plaintiff, and if so, in what amount? Answer: "$10,449.54, with interest on said sum from 15 January, 1918, at 6 per cent.".

5. Is the plaintiff indebted to the defendant on its counterclaim as alleged in the pleadings, and if so, in what amount? Answer: "$7,693.42."

Judgment was rendered upon the verdict, in favor of plaintiff, for the difference between the two amounts, that is, $10,449.54 and interest and $7,693.42, to wit, $3,445.77, and costs. Plaintiff appealed because there could be no recovery for usury, and defendant appealed because the court denied a recovery for usury on any of the serial notes except those in suit, the exception being as follows: "The court erred in excluding evidence to the effect that the defendant had paid the plaintiff as interest or discount on all the loans made by the plaintiff to it, the sum of $7,161.37, and in confining the defendant to evidence as to the amount of interest or discount paid by the defendant to the plaintiff on the three notes sued on in this case."

*King & Kimball* for plaintiff.
*Jerome & Scales* for defendants.

WALKER, J., after stating the case: There are three principal questions raised in this case: (1) Was there usury? (2) If so, can it be recovered by way of counterclaim? (3) Is the action barred by the statute?

1. If a bank loans two thousand dollars at 6 per cent interest, with the understanding and agreement that it shall retain five hundred dollars of the amount as a deposit of the borrower in the bank, which shall not be subject to his check or his withdrawal of it, but remain on general deposit under control of the bank, it is evident that the bank is

charging and receiving 7½ per cent interest or 1½ per cent in excess of the legal rate of interest. The transaction has not even the merit of being an ingenious device to hide or conceal the usury, for it is perfectly apparent that the legal effect is, as the borrower is paying 6 per cent on two thousand dollars, when he is to receive only fifteen hundred dollars. The usury is plain and palpable and there can be no doubt of the intent, on the part of the bank, to violate the law against the payment of excessive interest or usury. There are, generally speaking, four elements of usury: (1) A loan or forbearance of money, either express or implied; (2) upon an understanding that the principal shall be or may be returned; (3) and that for such loan or forbearance a greater profit than is authorized by law shall be paid or agreed to be paid; (4) entered into with an intention to violate the law. The fourth element may be implied if all the others are expressed upon the face of the contract, the other three must be established by a sufficiency of evidence. The transaction in question clearly embraces all of these elements. The usury is indisputable. 29 Am. and Eng. Enc. (.... Ed.), 509, states that, "In the case of loans or discounts by a bank at the highest legal rate of interest, a provision that the proceeds of the loan or discount or any part thereof shall be kept as a deposit in the bank during the period or a portion of the period of the loan renders the transaction usurious, for the reason that the borrower thus pays interest on money which he does not receive or have the use of." It was held in *Gilder v. Hearne*, 14 S. W., 1031, that where the statute provides that all contracts which, either directly or indirectly, stipulate for a higher rate of interest than 12 per centum per annum shall be void and of no effect for the whole rate of interest, a note for thirteen hundred and eighty dollars, bearing interest at 12 per centum, for which only twelve hundred dollars is received by the maker, is usurious. Judge Denio, in *East River Bank v. Hoyt*, 32 N. Y., 119, 126, said that "the character of the transaction, and particularly the material feature, that $500 of the money borrowed and for which interest was paid was to be retained by the lender until the expiration of the credit, is conceded by all the evidence. It was illegal to stipulate for such an advantage. In that, the case shows a contract for usury, with scarcely an attempt at disguise." And *Judge Potter,* who spoke for the Court in that case, said: "Assuming these facts to be true, it presents a case of bold, unmitigated violation of the statute in its letter and spirit. If the statute prohibiting usury can be evaded by such a subterfuge as has been offered in this case, it has become a dead letter, and had better be repealed at once. By such a contrivance an individual or a bank, in the loan of one-half their capital, may draw interest upon the whole. The device in this case lacks even the merit of ordinary skill in its consummation; it is

an act of cupidity and· extortion, that is not provided with even the decencies of a cloak to cover its nudity. If the Court could have anything to do with the policy of the usury laws the review of this case would present a fitting occasion to raise a warning voice against their repeal, but the policy of these laws is with the Legislature and not with the courts. The defense of usury, like every other legal defense· authorized by statute, is entitled to the same respect as other defenses in the courts, and when proved, it is the duty of the court to regard them the same as other cases. In the review of this case I have come to the conclusion that the testimony, independent of the testimony objected to, presents a clear case of judgment in favor of the defendant." *Chancellor Halstead* said of a transaction substantially similar to this one: "I think it is well calculated to show how very hard is the way of the transgressor; and to impress upon us the truth that if shallow devices are to be permitted to succeed in overcoming the defense of usury, great elasticity of conscience and great injury to the cause of morals will be the result." *Cummins v. Wire,* 6 N. J. Eq., 73, at p. 84. He added that the plaintiff with "studied sentences" could not disguise or conceal the usury, which was so glaring, and that his replication to the charge of demanding and receiving usury amounted "to nothing and a little less," and concludes that the case, then, as it stood when the bond and mortgage were executed, is clearly proved as set up in defense by the answer of Magie and Sanford. It was a loan of $1,900, and the taking, therefor, a bond and mortgage for $2,000, and interest thereon. This is clearly usurious.

Another case like the one at bar is *Butterworth v. Pecare,* where it was held that in an action by the receiver of a banking incorporation against the endorser of a note, an answer alleging that the bank of which plaintiff is receiver discounted the note on which he sues, upon a corrupt agreement against the form of the statute that the defendant should receive $300 (the amount of the note being $500 and it being payable three months from its date), and leave the remaining $200 in the bank until the note became due, then to be applied towards its payment, sufficiently states the defense of usury. Where it is proved that the bank discounted the note at the full legal rate for the time it had to run, and required the endorser to give them his check for $200, in pursuance of an agreement to that effect, on which it was discounted, and the next day charged this check against the credit given on the discount, a verdict finding usury should be sustained. Charging the check in account shows that the endorser was to have the use of only $300, less the discount on $500, and was to pay therefor interest on $500. Upon such facts it would be proper to instruct the jury to find for the defendants. 8 Bosworth (N. Y.), 671. And to the same effect

is *Barr v. Am., etc., Pisgah Church,* 10 Atl. Rep. (N. J. Ch.), 287. It was there held that where one, as agent of the mortgagee in the nego- tiation of a mortgage after the execution of the same, held it for three or four months, and delayed payment of the money due, and then, on the order of the mortgagors, advanced part of the money and collected interest on the full amount of the mortgage, and on foreclosure pro- ceedings it appeared that the subsequent acts of the agent were in part, if not altogether, the acts of the mortgagee: *Held,* that the mortgage was subject to the penalty of the New Jersey statute respecting usury, which provides that the true sum loaned, without interests or costs, only can be collected. It has also been held that where a person lends a sum of money, the repayment of which, with interest at the rate of 6 per cent, is secured by a mortgage, and at the time of the loan and in consideration of it a portion of the money in excess of the legal rate of interest is returned to him by the borrower, the transaction is usurious. *Andrews v. Poe,* 30 Md., 486. See, also, *Vilas v. McBride,* 17 N. Y. Supp., 171.

This kind of usurious agreement has been cast in various forms, but the courts have invariably stripped it of its flimsy disguise, and decided according to its substance and its necessary tendency and effect, when the purpose and intent of the lender are unmistakable. And this is the correct rule. *Unifelder v. Carter's Admr.,* 64 Ala., 527. In *Clark v. City of Des Moines,* 19 Iowa, 199, it was held that warrants issued by a municipal corporation in payment of a judgment at the rate of one dollar in warrants for every seventy-five cents due on the judgment are tainted with usury. See, also, Webb on Usury, sec. 27 *et seq.* But we are of the opinion that the principle of *Ehringhaus v. Ford,* 25 N. C., 522 and 529, denounces this kind of transaction as usurious. It was there held that where a bank of this State agreed to lend to an indi- vidual notes of a Virginia bank, which were at a depreciation in the market, below both specie and the notes of the bank in this State, and the borrower was to give his note at ninety days, to be discounted by the bank, and to be paid in specie or in the notes of the bank making the loan, the note given in pursuance of this agreement was void for usury, though the borrower stated at the time that he could make the Virginia notes answer his purpose in the payment of his debts to others. Usury consists in the unlawful gain, beyond the rate of 6 per cent, taken or reserved by the lender, and not in the actual or contingent loss sustained by the borrower. The proper subject of inquiry is, what is the lender to receive, and not always what the borrower is to pay, for the forbearance. In the course of the opinion it was said by *Judge Gaston:* "If the agreement was that the borrower should receive the amount lent, after deduction of the discount, in notes known to be depreciated

at their nominal value, and at the expiration of the term should repay that amount in lawful money, or in a currency less depreciated than that in which it was advanced, without further explanation, an assurance to carry that agreement into execution would be usurious. It is manifest that by that assurance there is reserved to the lender, after taking out the legal discount, the difference between the actual value of what was lent and what is to be returned. This is prohibited gain." And again: "The proper subject of inquiry is what is the lender to receive, and not always what the borrower is to pay, for the forbearance. Where the entire gain of the lender is derived from the borrower, the profit of the former and the loss of the latter are necessarily commensurate. But it is always safer to apply, when we can, the standard given by the law than to make use of any other, however exactly in general it may appear to correspond therewith." Relying upon *Ehringhaus v. Ford, supra,* this Court, in *Bank v. Ford,* 27 N. C., 692, held that every attempt by a bank to put upon a borrower bank bills not its own, and below par at the time and place, is usurious, unless the bank by its contract of loan engage to make the notes good as cash. *Judge Gaston* once observed: "If by an agreement it was intended to obtain in fact a greater compensation for the money lent than the statute allows, the law pronounces the agreement corrupt, whatever misapprehensions might have prevailed as to the construction of the statute, or however free the arrangement from every taint of moral turpitude. This may be hard, but thus the law is written and we must obey it." *Ehringhaus v. Ford, supra.* See, also, *Grant v. Morris,* 81 N. C., 150; *Burwell v. Burgwyn,* 100 N. C., 389; *Miller v. Ins. Co.,* 118 N. C., 612; *Yarborough v. Hughes,* 139 N. C., 199. We virtually held, at this term, in *Bank v. Wysong, Miles & Co.,* that a transaction like the one involved in this case was usurious.

2. While the transaction is usurious and the plaintiff can recover only the principal of the debt (*Barnet v. Bank,* 98 U. S., 555), the defendant cannot counterclaim for twice the amount of interest actually paid, because the Federal court of last resort, whose decisions upon the construction of the statute are both authoritative and conclusive upon us, has decided in several cases that the recovery cannot be had by way of counterclaim, but that payment of the penalty can be enforced only by a separate and independent action "in the nature of an action of debt." The principle is well stated by that Court in *Barnet v. Bank, supra* (25 L. Ed. of U. S. S. C., at pp. 212, 213), as follows: (1) Where illegal interest has been knowingly stipulated for, but not paid, there only the sum lent without interest can be recovered. (2) Where such illegal interest has been paid, then twice the amount so paid can be recovered in a penal action of debt or suit in the nature of such action

against the offending bank, brought by the persons paying the same or their legal representatives. The statutes of the States upon the subject of usury may be laid out of view. They cannot affect the case. Where a statute creates a new right or offense, and provides a specific remedy or punishment, they alone apply. Such provisions are exclusive. *Bank v. Dearing,* 91 U. S., 29 (23 L. Ed., 196). . . . The third defense set forth the like payment, and there is a claim to recover double the amount paid by way of counterclaim in the pending suit on the bill. This pleading is also fatally defective for the same reason as the first one. The remedy given by the statute for the wrong is a penal suit. To that the party aggrieved or his legal representative must resort. He can have redress in no other mode or form of procedure. The statute which gives the right prescribes the redress, and both provisions are alike obligatory upon the parties. While the plaintiff in such cases, upon making out the facts, has a clear right to recover, the defendant has a right to insist that the prosecution shall be by a suit brought specially and exclusively for that purpose, where the sole issue is the guilt or innocence of the accused, without the presence of any extraneous facts which might confuse the case and mislead the jury to the prejudice of either party." In *Schuyler Nat. Bank v. Gadsden,* 191 U. S., 451 (4 L. Ed., 258), the Court, through *Justice White,* said: "The question for decision is, Did the Supreme Court of Nebraska rightly decide that the controversy concerning usurious interest paid was to be governed by the statutes of Nebraska on that subject, and not by the laws of the United States on the same subject, as expressed in ch. 5198 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 3493)? We say this is the sole question, because it is undoubted that if the rights of the parties are to be determined by the laws of the United States, the ruling below was wrong. This results from the prior adjudications of this Court, holding that where usurious interest has been paid to a national bank the remedy afforded by ch. 5198 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 3493), is exclusive, and is confined to an *independent* action to recover such usurious payments. *Haseltine v. Central Nat. Bank,* 183 U. S., 132, 46 L. Ed. 118, 22 Sup. Ct. Rep. 50, and cases cited." The Court then held that the Nebraska court should have laid out of view the State law, and determined the rights of the parties according to the law of the United States, which is that the penalty cannot be recovered by counterclaim but *only* by a *separate* and *distinct* action. The cases in the highest Federal court have been perfectly uniform to this effect, and we cannot disregard them, but it is our duty to follow the decisions of that court, though we may radically disagree with the reasoning. These are the cases: *Barnet v. Bank,* 98 U. S., 555; *Bank v. Dearing,* 91 U. S., 29; *Driesbach v. Bank,* 104 U. S., 52;

*Stephens v. Bank,* 111 U. S., 197; *Bank v. Morgan,* 132 U. S., 141; *Haseltine v. Bank,* 183 U. S., 132; *Bank v. Gadsden,* 191 U. S., 431, and perhaps others. Those above cited are sufficient to show that the rule of construction in respect to this matter has been well established so that we cannot depart from it, it being the law and as much so as if the very words, "by a separate and an original action," had been inserted in the statute. We must adopt that construction by following the highest judicial court, as said by us at the last term, through *Justice Hoke,* in *Belch v. R. R.,* 176 N. C., 22, where it was held that our rule cannot prevail where there is, according to the construction of the highest Federal court, provision to the contrary in the Federal statute; citing *U. S. v. Boomer,* 183 Fed. Rep., 726. This construction of the Federal statute (U. S. Rev. Stat., sec. 5198) as to usury has been so firmly settled that State courts, which had held otherwise, reversed their decisions when *Bank v. Dearing, supra,* and *Bank v. Barnet, supra,* were decided, and attention is called to that fact by the U. S. Supreme Court in one of its decisions. Notable instances of such reversals are *Haseltine v. Bank,* 155 Mo., 58 (aff. in 183 U. S., 132); *Bank v. Bushane,* 96 Pa., 340; *Bank v. Lewis,* 81 N. Y., 15; *Caponigri v. Altieri,* 165 N. Y., 255; *Huggins v. Bank,* 24 S. W., 926. This Court, in *Oldham v. Bank,* 85 N. C., 241, holds that we are to be governed by the ruling of the Federal court of last resort, *Justice Ruffin* saying: "The result of the decisions, both of this and the Supreme Court of the United States, is that no State law upon the subject of usury can be made to apply to national banks, and that the only law which touches them in this respect is the provisions of the statute under which they are organized. The construction given to those provisions, too, by the Court must be respected and accepted by every other tribunal, seeing that it is the court of last resort whose jurisdiction extends to the subject. And it is well, perhaps, however some of its determinations may differ from preconceived opinions, that we have a Court whose judgments in such matters can have universal prevalence." He then refers to *Barnet v. Bank,* 98 U. S., 555, as deciding that usurious interest paid to a national bank cannot be pleaded by way of set-off or payment on the principal of the debt, the sole and exclusive remedy being by a separate and simple action of debt unmixed with any other matter, and follows that decision. He further says: "Influenced by this decision (*Barnet v. Bank, supra*), as we feel ourselves to be, the Supreme Court of Pennsylvania in *Bank v. Dushone,* 96 Pa. St., 340, recently decided, made a similar ruling, by which it overruled many of its previous adjudications. As we read the decision, it goes to the full length of saying that in an action brought by a national bank the plea of usurious interest paid, whatever be its form, can avail nothing, and that no action for a like cause, of what-

ever nature, lies against such an institution save the one given in terms by the statute." The Court of Appeals of New York held, in respect to this question and the Federal statutes of 1882, that in an action brought to recover the amount of a promissory note discounted by a national bank, it cannot be set up by way of counterclaim or set-off that the bank, in discounting a series of notes, the proceeds of which were used to pay other notes, knowingly took a greater rate of interest than that allowed by law. The remedy in such case is a separate action of debt to recover back twice the amount paid. The rule laid down in this case upon a former argument (*Nat. Bank of A. v. Lewis,* 75 N. Y., 516) was modified, as above, in conformity with the decision in *Barnet v. Nat. Bank* (98 U. S.) (8 Otto), 555, which the Court held to be controlling. Although State courts have concurrent jurisdiction with the Federal courts in actions by and against National banks, in an action in a State court the practice and pleadings prescribed by the Legislature of the State in regard to a counterclaim or recoupment cannot be resorted to, so as to defeat the object and intention of a Federal enactment. The provision of the U. S. Statute (sec. 914) that the practice, pleadings, forms and modes of proceedings in civil cases, in the Circuit and District courts, shall conform, as near as may be, to those existing at the time in the courts of record of the State, has no application in such case; it cannot annul or operate to prevent the application and enforcement of a statutory provision of a penal character. . Where, however, a national bank, in the discount of a note, has usuriously reserved a sum greater than the lawful rate of interest, the amount so reserved is forfeited (U. S. R. S., sec. 5198), and cannot be recovered in an action upon the note. *Bank v. Lewis,* 81 N. Y., 15.

It is said now, and we believe by all the courts, that the local law as to pleading and procedure cannot alter the law and has no application, when the method of pleading is specially prescribed by the Federal law, which must be followed. The subject is fully considered and the authorities collected and reviewed in the notes to *Bank v. Gentry,* 56 L. R. A., 672, at pp. 689–699. We would not ourselves adopt this construction of the act of Congress were it a question before us to be decided irrespective of the ruling of the highest Federal court, as the words by an "original or independent" action in the nature of an action of debt are not used in the act, nor do we think there is anything there from which they should be implied, but that the Congress merely intended to refer to the nature of the action in which recovery should be had, as being substantially one of debt, without regard to whether it was an independent one, or by way of cross-bill or cross-action or counterclaim. There is no sound reason, in our opinion, why it should be so. It would seem to be more appropriate to try the question by way

of counterclaim in the action upon the debt, when the whole matter may be considered and the rights of the respective parties determined upon all the facts, and with greater precision. But we follow the decision of the highest Federal court as binding upon us, without regard to its reasoning or the mental process by which it reached the conclusion we have stated, which was the course taken by the Court in *Higgins v. Cit. Nat. Bank,* 24 S. W. Rep., 926, and by many other courts. Our cases holding that unlawful interest paid may be recovered back by way of counterclaim have no application, as they refer to our own statutes, which now expressly give that remedy. *Bank v. Ireland,* 122 N. C., 571. That case dealt with our usury statute (Code, sec. 3836), and was founded upon *Smith v. B. and L. Asso.,* 119 N. C., 257, and not upon the Federal statute, and even if applicable, which it is not, we could not disregard the decisions of the Federal Supreme Court in such a matter. The United States Statute of 1882 is equally inapplicable. It only confers jurisdiction on the State courts of suits for or against national banks, and as said in *Kinser v. Farmers Nat. Bank,* 58 Iowa, 728, the design of the Congress was to confer jurisdiction upon the proper State court, and to leave it, after the action is begun, to be governed by its own mode of proceeding, when not in contravention of any special provision of the Federal law upon the subject. It was clearly not intended to repeal the provision as to how actions for usurious interest actually paid should be brought. Several of the cases cited by us were brought upon transactions which occurred after the act of 1882 was passed, and still the former rule was applied, as if that statute had no effect whatever upon the question.

The other exceptions are untenable or without merit. It would seem that they now become irrelevant, as we will direct judgment to be entered for the plaintiff according to the finding upon the fourth issue and the prayer of his complaint, that is, for the principal of the debt without interest, except as specified in that issue. But we discover no error in the other rulings to which exceptions were taken. A decision of the question raised by the plea of the limitation contained in the Federal statute becomes, of course, unnecessary.

It all results in this, that the counterclaim must be dismissed, and that the judgment be modified so as to strike therefrom all recovery upon the same, and that judgment be entered for the plaintiff upon the fourth issue and the answer thereto, without deduction therefrom, or diminution thereof, by reason of any penalty for unlawful interest paid, the amount to be inserted in the judgment, being $10,449.54, with interest from 15 January, 1918. This gives the defendant the benefit of the forfeiture of interest, but not of the penalty, under the Federal statute.

Plaintiff's appeal.    Error.         Defendant's appeal.    No error.