**CARMICHAEL et al. v. CITY OF DOTHAN et al. (4 Div. 107.)**

(Supreme Court of Alabama. April 10, 1924. Rehearing Denied June 19, 1924.)

**1. Municipal corporations ⬅925 — Limitation as to period of running of municipal bonds held to apply only to bonds issued at higher rate.**

In Acts Sp. Sess. 1909, p. 192, § 11, and Acts Sp. Sess. 1920, p. 116, the limitation against bonds running more than 10 years applies only when they bear the excessive rate authorized to cities of less than 5,000 population, and does not apply to bonds issued by either class when the interest rate is within the 7 per cent. limitation allowed the larger class by the latter act, and as to which the bonds may run 30 years.

**2. Municipal corporations ⬅907—Act regulating price of bonds not repugnant to Constitution regulating issue of bonds.**

Acts Sp. Sess. 1920, p. 116, § 2, regulating the sale of bonds and specifying the price at which they shall be sold, does not authorize a governing board of a city, town, or county to issue or charge bonds in violation of Const. 1901, § 222, dealing with the issuance of bonds, which does not prevent a sale for less than par or control or forbid a discount.

**3. Municipal corporations ⬅921(2)—Bonds may be sold below par, but must not cost municipality interest rate greater than specified.**

Under Acts Sp. Sess. 1920, p. 116, authorizing issue of bonds bearing not to exceed 7 per cent. interest, and requiring them to be sold at not less than par, bonds bearing a rate lower than 7 per cent. may be sold below par, but not at such a discount as to cost the city a rate of interest greater than 7 per cent., considering the discount.

**4. Municipal corporations ⬅921(2)—Selling bonds bearing interest at discount not making actual interest exceed legal rate held permissible.**

Under Acts Sp. Sess. 1920, p. 116, regulating the issue and sale of municipal bonds, where a city had authority to issue bonds bearing 7 per cent. interest, and issued bonds to run 18 years, to bear 6 per cent. interest, selling them at 90 was proper, since the actual interest would not exceed 7 per cent.

**5. Municipal corporations ⬅926—Deposit of proceeds of bonds in bank to be paid out as work progressed held not to illegally increase interest.**

Where the issue of municipal bonds was otherwise legal, the fact that the proceeds were to be placed in a bank and paid out as work of erecting a power plant progressed did not increase the interest or render the transaction otherwise illegal.

**6. Municipal corporations ⬅926—That sinking fund was to be created from revenue from operation of plant held not to increase interest on bonds.**

Where a sinking fund to meet payments of bonds was to be created by 25 per cent. of revenue derived annually from operation of a plant to be built from proceeds of the bonds, and not from the proceeds of sale of bonds, this did not increase rate of interest to be paid on the bonds by city.

**7. Appeal and error ⬅1033(2)—Overruling of demurrer favorable to appellant will not be reviewed on appeal.**

In a suit to annul a bond issue to erect a power plant, action of the trial court in overruling a demurrer to a feature of the bill seeking to cancel the contract because not let to the lowest responsible bidder, and because a certain corporation was a foreign corporation, and not qualified to do business in the state, was favorable to the appellant, and will not be reviewed.

**8. Municipal corporations ⬅925—Bonds not rendered invalid by change as to sinking fund, or failure to incorporate such provision on face of bond.**

Under Const. 1901, § 222, relating to ballots authorizing municipal bonds, it is not necessary to include the sinking fund feature of the ordinance on the ballot, and where it was not done the change by city authorities as to the method of creating the sinking fund or failure to incorporate such provision in the face of the bonds did not affect their validity or produce a different bond from the one authorized by the voters.

**9. Municipal corporations ⬅907—Bonds not invalidated by being secured by mortgage authorized by act subsequent to election authorizing bonds.**

The fact that Acts Sp. Sess. 1921, p. 6, authorizing municipalities to mortgage property to secure bonds issued to erect lighting plants or a watering system, was passed after an election authorizing a municipal bond issue, did not render the act contrary to Const. 1901, § 222, relating to authorization of issue of bonds by the Legislature, if made applicable to the bonds in question, and did not invalidate the bonds in question.

Appeal from Circuit Court, Houston County; H. A. Pearce, Judge.

Bill in equity by D. C. Carmichael and others against the City of Dothan and others, seeking to annul a bond issue for the purpose of erecting a power plant, to set aside the sale of such bonds, to cancel a mortgage executed by the city upon the power plant securing such bonds, and to cancel a contract for the erection of the plant. From a judgment sustaining demurrer to the bill, complainants appeal. Affirmed.

The ordinance calling the election upon the proposed bond issue provides, in part as follows:

"That for the purpose of providing means with which to pay the interest due annually on said bonds, payable semiannually, that 25 per cent. of the gross revenue derived annually from the operation of said plant be, and the same hereby is, designated and fixed, to be placed in a sinking fund from the revenue so de-

rived from the operation of said plant, and said 25 per cent. of said revenue shall be placed in and known as a sinking fund for the purpose of paying said interest and redeeming said bonds as the same accrue, and this provision shall be included and embraced in the face of the bonds."

It is alleged that the following provision is made in the mortgage or deed of trust:

"$15,000.00 for 1923, 1924 and 1925; 1/40 of the bonds outstanding for 1926 and 1927; 1/20 of the bonds outstanding for 1928 to 1932; 1/15 of the bonds outstanding until the sinking fund is sufficient to retire the bonds at maturity."

Farmer, Merrill & Farmer, of Dothan, for appellants.

The provision that a part of the money borrowed should remain on deposit increases the rate of interest and makes the transaction usurious. Planters' Nat. Bank v. Wysang & Miles, 177 N. C. 380, 99 S. E. 199, 12 A. L. R. 1412; Id., 250 U. S. 665, 40 Sup. Ct. 13, 63 L. Ed. 1197; Reed v. Athens, 146 Tenn. 168, 240 S. W. 439. The bonds could not be sold for less than par. Weakley v. Henry, 204 Ala. 463, 86 South. 46; Const. 1901, § 222; Wallace v. Ball, 205 Ala. 623, 88 South. 442. In selling bonds, the municipality must adhere to the provisions of the statute. 28 Cyc. 1596; 5 McQuillin, Mun. Corp. 4858. Failure to set out the provision of the ordinance for a sinking fund on the face of the bonds invalidated them. 28 Cyc. 1592; Dunn v. White, 209 Ala. 460, 96 South. 444. The mortgage upon the plant was without authority of law and void. Const. 1901, § 222; Wallace v. Ball, supra. The bonds could not run for a longer period than 10 years. Acts 1909, p. 188; Andalusia v. Baldwin, 208 Ala. 19, 93 South. 894. Acts 1923, p. 630, is unconstitutional and void. Const. 1901, §§ 222, 95; Brannan v. Henry, 175 Ala. 454, 57 South. 967.

W. E. Norvell, Jr., and E. J. Heitzburg, both of Nashville, Tenn., and Espy & Hill and Reid & Doster, all of Dothan, for appellees.

The change in the provision for a sinking fund did not deprive the city or any citizen of any right, and did not increase the burden of either. It is for the benefit of the bondholder and may be changed with his consent. 5 McQuillin on Mun. Corp. 4921; 28 Cyc. 1641. Bonds bearing the interest rate here are not limited to 10 years. Hawkins v. L. & N., 145 Ala. 385, 40 South. 293; Ex parte Dunlap, 71 Ala. 73; Brooks v. Mobile, 31 Ala. 227; Shell v. State, 2 Ala. App. 207, 56 South. 39; Acts 1920, p. 116; Acts 1923, pp. 18, 630; 5 McQuillin, p. 4870; 28 Cyc. 1606; Utter v. Franklin, 172 U. S. 417, 19 Sup. Ct. 183, 43 L. Ed. 498.

ANDERSON, C. J. [1] Section 11 of the act of 1909 (Acts Sp. Sess. p. 192), fixing the nature of municipal bonds and the period within which they may run, provides that no bonds under this provision of the act shall run for a longer period than 30 years, and no bond issued by a city with a population of exceeding 6,000 inhabitants shall bear a greater rate of interest than 5 per centum, payable semiannually. Then follows the last provision of said section (incorrectly set out in the published acts, but correctly set out in the case of City of Andalusia v. Baldwin, 208 Ala. 19, 93 South. 894), which is as follows:

"But cities of less than six thousand population and towns may issue bonds bearing six per cent. interest per annum, but no bonds bearing six per cent. interest shall run for a longer period than ten years."

The general purpose of this act was to fix a limitation of 30 years as to the running of bonds and a maximum rate of interest of 5 per cent., but to make an exception as to the smaller cities and towns by allowing them to provide a greater rate than 6 per cent., but restricting the life of the bonds to 10 years instead of 30. The act of 1920 (Acts Sp. Sess. p. 116), authorizes cities and counties of 5,000 population to issue bonds at a rate of interest not exceeding 7 per cent. per annum, and that the rate of interest on bonds issued by cities and towns of less than 5,000 shall not exceed 8 per cent. interest. This last act makes no express reference to the act of 1909, but, as it increases the rate of interest that the bonds may bear, and reclasses the cities by the slight change of 5,000 instead of 6,000 population, it must be presumed that the Legislature was conscious of the former act as well as its intent and purpose, and intended by said last act to merely increase the rate of interest, subject to the limitation and restriction of the former as to time, and which in effect meant that when the interest was within the limitation fixed for the larger class the bond issue could run for 30 years, whether the bonds be issued by either class, but where the cities of the smaller class issued bonds for the excessive rate allowed them the bonds could not run for exceeding 10 years. The result is, and we so hold, that the two acts must be construed as authorizing the bond issue to all counties, cities, and towns of any size when the rate of interest does not exceed 7 per cent., but when cities and towns of not exceeding 5,000 population avail themselves of the authorized additional rate of interest the bonds must not run longer than 10 years. In other words, the limitation of 10 years, in order to harmonize and make the two acts workable and efficacious as to the purpose and intent of same, must be considered as applicable only when the bonds bear the excessive rate authorized to the smaller class, and does not apply to bonds issued by either class when the rate of in-

terest is within the limitation allowed the larger class by the last act, that is, 7 per cent., and as to which the bonds may run for 30 years.

In the case of City of Andalusia v. Baldwin, supra, the act of 1920 was not involved, as the bond issue was prior to the passage of same. True, in referring to said act it was in effect stated that it changed the rate of interest and not the time the bonds could run. There was no express change of time in said last act, but by necessary implication the 10-year limitation in the former act must be held as applicable only when the smaller cities and towns adopt the excessive rate of interest, 6 per cent., under the act of 1909, and 8 per cent. under the act of 1920. As the bonds in question bore only 7 per cent. they could run for a period of 30 years.

[2, 3] Section 2 of the act of 1920 (Acts Sp. Sess. p. 116) deals with and regulates the sale of bonds, and does not authorize the governing board of the city, town, or county to issue or change bonds in violation of section 222 of the Constitution. This section of the Constitution deals with the issuance of the bonds, and not the sale thereof, and does not prevent a sale of same for less than par or control or forbid a discount, and said act of 1920 is not repugnant to section 222 of the Constitution. The act authorized the issue of bonds in question for a rate not to exceed 7 per cent., and requires that they shall not be sold for less than par; but when bonds are issued for a lower rate of interest than 7 per cent. they may be sold below par, but the discount shall not be so great as to cost the municipality a greater rate of interest than 7 per cent. taking the discount into consideration. The bond issue in question bore 6 per cent., and the respondent city of Dothan had the authority to sell the same at a discount which, when taken in connection with said 6 per cent., would not exceed 7 per cent.

[4] It is urged that the sale of bonds was violative of the act of 1920, as it will cost the city a greater rate of interest than 7 per cent. taking the discount into consideration. The bonds are for 6 per cent., and were purchased for 90 cents, or at a discount of 10 per cent., and they run for a period a little in excess of 18 years, or, to be accurate, for 18 years one month and 20 days. As to whether or not the city will have to pay over 7 per cent. interest, taking into consideration the discount, is a question of mathematics. We find upon an examination of the "Consolidated Tables of Bond Values" issued by the "Financial Publishing Company" that, in order for a 6 per cent. bond, which runs for a period of 18 years, to cost the city 7 per cent. interest, it must sell for 89.85. Here the bonds not only sold for 90, but run for a period in excess of 18 years, and as per this table the cost of in-terest to the city is less than 7 per cent. The writer has also conferred with and been assisted by several expert mathematicians who have verified the foregoing table, and are quite positive that the interest cost to the city, discount considered, is a fraction less than 7 per cent.

[5] The fact that the proceeds of the bonds were to be placed in a bank and paid out as the work progressed did not increase the rate of interest or render the transaction otherwise illegal. This requirement was no doubt intended in good faith, and for the purpose of guaranteeing that the money was to be expended for the purpose for which the bonds were issued and upon which said bonds were secured by mortgage. Reed v. Athens, 146 Tenn. 168, 240 S. W. 439. The case of Planters' National Bank v. Wysong Co., 177 N. C. 380, 99 S. E. 199, 12 A. L. R. 1412, is one where the lender bank required the borrower to keep continuously on deposit a portion of the loan, and the lender therefore had the use of same, and the borrower did not, and the court properly held that the transaction was usurious. Here the purchaser of the bonds did not retain the use of a part of the proceeds, but all of same was to be deposited with a bank, a third party, to be expended or paid out as the work on the water system progressed.

[6] The sinking fund was to be created by 25 per cent. annually of the revenue derived from the operation of the plant, and not from the proceeds of the sale of the bonds, and this did not increase the rate of interest to be paid by the city.

[7] The trial court seems to have overruled the demurrer to that feature of the bill seeking to cancel the contract because not let to the lowest responsible bidder, and as this ruling was favorable to the appellant we are not called upon to review the same. Same as to that feature of the bill which seeks to avoid or cancel the contract because the Brook-Calloway Company is a foreign corporation, and had not qualified to do business in the state of Alabama.

[8] It is urged that the bonds are invalid because there does not appear in the face of same that provision of the ordinance creating a sinking fund for the payment of interest and the retirement of said bonds, and for the further reason that the sinking fund as provided for in the mortgage is different from the one contained in the ordinance, and which should have appeared in the face of the bonds —that section 222 of the Constitution requires the approval of the voters before the issuance of bonds, and when they approve or adopt a bond issue the city authorities have no right to change the nature or character of the bonds. As we understand section 222 of the Constitution, it provides that the ballot shall set forth the character of the bond to be issued, but it need not contain the fact as to whether or not, or how, a sinking fund is

to be created for the purpose of paying the interest and retiring said bonds, and unless the ordinance so doing is gratuitously placed on the ballot it could not be soundly held that the voters had authorized the bonds only with such a sinking fund provision. The bill does not aver that the ballot contained this useless provision of the ordinance, and in the absence of such an averment it cannot be held that the bond as issued materially varied from the one authorized by the voters. It not being necessary to include this feature of the ordinance upon the face of the ballot, and it not having been done, the change by the city authorities as to the method of creating the sinking fund or a failure to incorporate such a provision in the face of the bonds did not affect the validity of same or produce a different bond from the one authorized by the voters.

[9] It is next insisted that the city had no authority to execute a mortgage on the plant to secure the bonds. We find ample authority for this under the act of 1921 (page 6, Acts Special Session). This act authorizes all municipalities of 6,000 population or over to execute a mortgage or deed of trust to secure the payment of the principal and interest of all debts, bonds, or other evidence of indebtedness hereafter incurred or issued by said cities for the construction of waterworks, lighting plants, or water system, or the extension or improvement of same, and the bonds in question were not in fact issued until after the passage of the act. The act does not relate to the issuance of bonds or the incurring of an indebtedness, but to the right to secure the same when they do exist. True, the act was passed after the election authorizing the bond issue; but this would not render the act violative of section 222 of the Constitution if made applicable to the bonds in question. Though the bonds approved by the voters were not then to be secured by mortgage, under existing law, the subsequent legislative grant of such authority did not work such a change in the character of the bonds as to violate the will of the voters as previously expressed at the polls. The result of the election authorized the issue, and the fact that the city was subsequently authorized, but before issuing the same, to make them a primary charge on the plant to be constructed with the proceeds of said bonds, wrought no change in the bonds nor placed any additional burden upon the citizens and taxpayers. Indeed, it was a benefit, rather than a detriment, to them, to provide for the payment of said bonds from a special source, instead of from the general funds of the city.

The case of Wallace v. Ball, 205 Ala. 623, 88 South. 442, is unlike the one in hand. There the act involved attempted to validate bonds already issued by in effect changing the bonds as previously authorized by the voters. When the bonds in said case were voted they bore a certain rate of interest, and could not, under existing law, be sold below par, and the act condemned by this court attempted to authorize the issuance of bonds at a greater rate of interest than they bore, when approved by the voters, by authorizing a discount when the interest and discount did not exceed 7 per cent., in effect authorizing 7 per cent. bonds when the voters had only approved an issue of 5 per cent. bonds to be sold at par. Here the bonds authorized by the voters bore 6 per cent., and the law at the time of the election not only authorized such bonds, but also provided that they might be sold below par if the interest, discount considered, did not exceed 7 per cent., and the voters get what they authorized.

The decree of the circuit court is affirmed.

Affirmed.

SOMERVILLE, THOMAS, and BOULDIN, JJ., concur.