THE EAST RIVER BANK, Respondents, v. ANSON B. HOYT and others, Appellants.

An arrangement by which one seeking a discount at a bank, is required to obtain a discount of paper amounting to $1,500, to secure the application to his use of $1,000 of the proceeds, without the right to use the remainder thereof, except in payment of the paper discounted when it shall become due, renders the transaction usurious and void.

APPEAL from judgment by the General Term of the Supreme Court of the 1st district. The action is upon a promissory note, made by the two defendants, Anson B. Hoyt and George Hoyt, copartners, of the firm of Hoyt & Brother, payable to the order of Belding Hoyt, another defendant, and indorsed by him and also by the other defendants, dated 22 June, 1861, payable at the People's Bank. The note was discounted by the plaintiffs.

The defense is usury. The answer in substance alleges that the plaintiffs held a note of Hoyt & Brother, the makers, for one thousand dollars, past due, and which they, the defendants, were desirous of paying. That the plaintiffs proposed to them to discount their paper for $1,500, on condition that $1,000 should be used as a renewal of their past due note, and that $500 so to be discounted should remain in the bank as a deposit, until the note in question (which was a part of the paper to be discounted), should become due, and that the defendants should leave with the bank their check for $500, to meet and pay the note in suit when it became due; and that upon this condition three notes, of $500 each, were discounted by the plaintiffs, the proceeds so put to the credit of Hoyt & Brother, and their check given payable at the maturity of the note in question. The other defendants were mere accommodation indorsers of the note for "Hoyt Brothers," having received no consideration therefor.

The action was tried in October, 1862, at a Circuit Court. The verdict of the jury was for the defendants, and the court ordered the complaint dismissed, and a judgment was entered for costs in favor of the defendant. From this judg-

ment the plaintiff appealed to the General Term, who reversed the judgment and directed a new trial, costs to abide the event. From this order, the defendants appeal to this court, and stipulate, as under sec. 11 of the Code, in case of affirmance that the judgment be absolute.

*R. W. Van Pelt*, for the appellants.

I. The transaction was usurious. The bank loaned $1,000 on condition that interest should be paid on $1,500.

II. The main and sole inducement, on the part of the bank, to enter into the transaction, was to get a larger rate of interest than seven per cent.

III. The testimony objected to was properly admitted, on the principle that the admissions or declarations of agents are to be received in evidence as a part of the *res gestæ*. (1 Gre. on Ev., § 113; Cow. and Hill's Notes, 180, 181; *Fogg* v. *Child*, 13 Barb., 250; *Amos* v. *Middleton*, 23 Barb., 571.)

IV. Such acts of the agent were subsequently ratified by the bank. (*Como* v. *Port Henry Iron Co.*, 12 Barb., 27.)

*Banks* and *Anderson*, for the respondents.

I. In suits by or against corporations, the admission of any member, not named on the record as a party to such suit, cannot be received as evidence against such corporation, unless such admission was made concerning some transaction in which such member was the authorized agent of such corporation. (3 R. S., 5th ed., 692; Ang. and Am. on Corp., § 309.)

II. The director of a bank is not, by virtue of his office, the authorized agent of such bank with reference to the discounting of notes by the bank for its customers.

III. The power of discounting notes is primarily vested in the directors, and must be exercised by them, or some one thereto lawfully authorized.

IV. The power of the president of the bank to discount, if it existed, was personal, vested in him by the board, and could not be delegated. Hence, Mr. Jennings had no authority, and his letter should not have been received.

V. A new trial should be granted because of the improper reception of the testimony objected to. (See *Williams* v. *Fitch*, 18 N. Y., 546.)

POTTER, J. The General Term, in reversing the judgment below, proceeded upon the assumption that the ruling of the judge on the trial in admitting, as evidence, the state· ments of one of the directors of the plaintiff, was the only question in the case. In this view, I think, the General Term erred.

If the plaintiffs, in discounting the three notes, amounting to $1,500, imposed it as a condition, to the renewal of the overdue $1,000 note, that $500, the excess of the proceeds of the three notes, should remain as a deposit in their bank, until the note in question became due, and demanded the defendant's check for such excess of proceeds, payable at the time the note become due, and the defendants agreed to, and did consummate this condition, then the note in question was clearly void for usury.

Independent of the question, upon which alone the General Term reversed the judgment below, it appears to me that the clear and decided weight of evidence of the plaintiff's president, and the undisputed evidence of one of the defendants, are sufficient to establish the defense set up; and if we strike the evidence objected to out of the case, we are still necessarily brought to the conclusion that the defense was made out, and that the defendants should have judgment.

It is not disputed that the defendants, Anson B. Hoyt and George Hoyt, owed the plaintiffs $1,000 upon a note then past due; that they applied to the bank for a discount to pay this over due note, that the bank declined to discount for this purpose, assigning as the reason, and the only reason, that the deposits of the defendants, Hoyt Brothers, in their bank were small. They had a right, doubtless, to refuse for this reason, or to refuse without assigning any reason, though the assigned reason might be quite suggestive to the defendants. The president more than *suggested*, he said "the bank discounted for those who had balances of sufficient value to pay

for their accounts." Here was also information that deposits were of value to the bank. But these suggestions, and this information were needless by way of hint. The president goes beyond intimations, inferences and suggestions; he testifies in terms: "We told him if he wanted a discount, *he must keep a good balance*," and it is seen that they had previously declined "on account of the smallness of his deposit." Now, the president dictates terms that amount to a condition. This, it must be borne in mind, is a proposition made by a lender of money, to a patron and customer; made to one whom they knew was in circumstances of some need; to one who was in some degree within their power; whose paper stood overdue and dishonored; whose credit, in degree, depended on their favor. There could, therefore, be no mistaking this proposition to be a condition of the agreement to discount. The agreement was accepted. Mr. Hoyt testifies that he promised "that his balance should be reasonable thereafter."

What appeared to the plaintiffs to be "*a reasonable amount*," so to be kept in deposit by the defendants, and what sum the defendants consented so to leave in deposit, appears from uncontradicted evidence in the next step taken in carrying out the agreement. The president says: "The bank discounted three notes for him (meaning Anson B. Hoyt, with whom the arrangement was made), of $500 each, and credited the proceeds, less the discount at 7 per cent, to the defendants." The defendant Anson B. Hoyt's testimony in relation to the condition, and to the consummation of the agreement, which is uncontradicted, is as follows: "He" (the president) "said if I would draw my check for $500 and leave it in the bank, that the three notes for $500 each would be discounted for me." There can be no doubt, I think, that the proposition as so stated is a condition. The witness adds: "Of the proceeds of these three notes, I was to have $1,000; $500 was to be left in the bank with my check for $500, to take it up when it (the note) became due." "I paid thirty-three dollars interest for the use of the $1,000." The witness then produced the memorandum made at the time, showing the apparent items of interest as they had been cast, which, together, amount to

$33.48. If, as it might seem to be, one of the items in this memorandum, $5.94, is interest on the overdue note, another item of 91 cents is for the protest, and the interest on two of the $500 notes were cast for 100 days, one for 78 days, as is indicated by this memorandum; then the cast of interest on the $1,500 is correct, and the total of all the items so deducted or paid would be $33.48. The witness then adds: "The president required this to be done before he would let me have the discount." He further adds: "I had a small balance in the bank before these notes were discounted."

The only fact in the evidence (I have stated) about which there can be a possible pretense of conflict, is that the two witnesses apply different terms to the same act. The defendant supposes he paid interest on the discount on the day of it, by passing to the bank a sum equal or about equal to the interest as computed; the memorandum of which made at the time he produced. The president of the bank took the interest out of the proceeds of the note before he put the balance to the defendant's credit, and then used the sum paid by the defendant, which was equal to the interest, and calls it a deposit; the result is the same whether it is called by the one name or the other. The fact is sworn to by both; there is no conflict except whether the sum was $33 or $34. Whether it was the one or the other, is immaterial. Whether it was interest or deposit, is immaterial. From the testimony of both, one fact remains certain: the bank took out of the defendant's money the interest on $1,500 for the time the notes had to run, and that by the agreement as made and consummated, the defendant received but $1,000. That the plaintiff demanded, and the defendant agreed to comply with the demand, of paying the interest on $1,500 for the use of $1,000. That the plaintiff demanded, as a condition for the loan, the use of $500 of the defendant's money for three months, and the defendant consented to the demand. That the plaintiffs demanded of the defendant his check at the time of the discount for $500 of the proceeds of said notes, payable when the note in suit became due, and the defendant gave his check accordingly; that the plaintiff demanded that the defendant

should leave $500 of the proceeds of the discounted note as a deposit for three months as a condition to the loans, and the defendant agreed to submit to the demand.

The president himself corroborates Hoyt in the fact of the agreement, and of taking the check in consummation of it. These unconflicting and uncontroverted facts stand by themselves. They are unaffected by the evidence that was excepted to. A court or a jury would not be permitted to disregard them standing alone, and judgment should be given in accordance with them. Assuming these facts to be true, it presents a case of bold, unmitigated violation of the statute in its letter and spirit. If the statute prohibiting usury can be evaded by such a subterfuge as has been offered in this case, it has become a dead letter, and had better be repealed at once. By such a contrivance, an individual or a bank, in the loan of one-half their capital, may draw interest upon the whole. The device in this case lacks even the merit of ordinary skill in its consummation; it is an act of cupidity and extortion, that is not provided with even the decencies of a cloak to cover its nudity. If the court could have anything to do with the policy of the usury laws, the review of this case would present a fitting occasion to raise a warning voice against their repeal, but the policy of these laws is with the legislature and not with the courts. The defense of usury, like every other legal defense authorized by statute, is entitled to the same respect as other defenses in the courts, and when proved, it is the duty of the court to regard them the same as other cases. In the review of this case, I have come to the conclusion that the testimony in this case, independent of the testimony objected to, presents a clear case for judgment in favor of the defendant. The judgment of the general term should be reversed.

DENIO, Ch. J. The judgment rendered on the verdict for the defendants, was reversed by the General Term on appeal; and a new trial was ordered, on the ground of an alleged erroneous ruling in admitting the letter of J. W. Jennings in evidence against the plaintiff's objection. The purport of

the letter was an offer to extend to the defendants an accom-
modation, to the amount of $1,000, on condition that the
defendants should give the bank paper for $1,500, on which
interest was to be paid, and should leave $500 of the $1,500
with the bank until the paper should mature, when the
defendants would be at liberty to draw it.   The letter con·
tained the suggestion that money was worth more than seven
per cent, and that the bank did not discount unless the
borrower had money on deposit in the bank.   It was a sug-
gestion, without any decent disguise, to lend the defendants
the money, if they would pay an usurious premium.   This
does not seem to be questioned in the opinion of the Supreme
Court; but it is said the letter was not evidence against the
plaintiff.   To determine this question, we are to take into
consideration not only the facts appearing when the letter
was offered, but those which were established in the subse-
quent stages of the trial; for if, upon the whole evidence, the
letter was admissible, the judgment should not be reversed
on account of the order in which it was given.   In examin-
ing these circumstances, we see, in the first place, that the
letter purports to have been written at the bank, for the date
and heading in effect so state.   Then the writer was not
merely a director of the bank, but a member of its discount
board.   The duties of that board are not stated, nor does it
appear what authority a single member of it had.   In the
absence of such evidence, which it was easy for the plaintiff
to furnish, and which we cannot suppose the defendants
had any means of showing, we should intend what we know
to be usual, that each individual member of a discount
committee is an organ of communication with customers
needing discounts, without authority, perhaps, to commit the
board decisively, but whose recommendations are of con-
siderable weight.   The title of the board, or committee, as
it should more properly be called, indicates that it was
concerned in determining upon offers of customers for dis-
counts.   The remaining circumstance bearing upon the
admissibility of the letter was, that the defendants presented
themselves with the three notes of $500 each, precisely

according to the suggestions of Mr. Jennings; that their proposal was entertained; that in effect, with the proceeds of two of the notes they paid up the former note of $1,000 which had matured, and left the proceeds of the remaining note of $500 to their credit at the bank, to be drawn for when the note matured at the end of three months, and not before. The president testifies that he told the defendant, with whom the business was transacted, that if he wanted the discount he must keep a good balance, and that he promised that his balance should be reasonable thereafter. He denies, it is true, that he told the defendant that money was worth more than 7 per cent, and also that he had any knowledge of the letter of Jennings. The transaction actually consummated was precisely such in form and substance as Jennings had suggested, and it is not denied but that he, as a member of the discount committee, participated in it.

I am of opinion, that by connecting the facts thus established with the letter of Jennings, the letter was competent to be received in evidence for the consideration of the jury.

I am moreover of opinion, that independently of the letter, a very clear case of usury was proved. The point in which the testimony of the president differed from that of the defendant Hoyt, was verbal merely, and was not material. The character of the transaction, and particularly the material feature, that $500 of the money borrowed and for which interest was paid, was to be retained by the lender until the expiration of the credit, is conceded by all the evidence. It was illegal to stipulate for such an advantage. In that, the case shows a contract for usury, with scarcely an attempt at disguise.

I am in favor of reversing the order appealed from, and affirming the judgment on the verdict.

Judgment on the verdict affirmed.