### ENGLISH LUMBER COMPANY v. WACHOVIA BANK AND TRUST COMPANY.

(Filed 18 February, 1920.)

**1. Appeal and Error—Reference—Findings.**

 The findings of the court, when passing upon the report of a referee, are conclusive on appeal when based upon legal evidence.

**2. Usury—Banks and Banking—Agreement—Deposits—Contracts.**

 Where the bank has followed an arrangement made by its depositor that the latter keep a certain per cent of the money borrowed upon his own paper and paper of its customers upon which he remains responsible, and which is good and collectible by the bank without trouble to it, and thus collects on the series of transactions a rate of interest in excess of the legal rate, the interest thus received is usurious and comes within the intent and meaning of the statute forbidding it.

**3. Usury—Penalty—Limitation of Actions—Mutual Running Accounts— Statutes.**

 Where the bank, in following an agreement with its depositor, charges an usurious rate of interest upon loans made to him upon a continued series of transactions whereby it received at a certain discount upon the

commercial papers of its depositor received by him in the course of his business, but upon which the depositor remained bound, and the collection of which was without trouble to the bank, and the usurious rate was by reason of an agreement that he keep a certain per cent of the money borrowed from the bank on deposit there, the transaction constitutes a mutual running account, and an action for the penalty under our statute is not barred within two years next from the last item therein. Rev., 396 (2).

BROWN, J., dissenting.

APPEAL by defendants from *Ray, J.,* at the July Term, 1920, of BUNCOMBE.

This is an action to recover the penalty for usurious interests alleged to have been paid by the plaintiff to the defendant.

The defendant denied that usury was charged or paid, and pleaded the statute of limitations.

A reference was ordered, and upon the report being made, which was in favor of the defendant, exceptions were filed by the plaintiff, and upon the hearing the material findings of fact and conclusions of law of the referee were reversed, additional findings made by the court, and judgment rendered in favor of the plaintiff, and the defendant excepted and appealed.

It appears from the findings of fact made by the court that in 1909 the plaintiff was engaged in the lumber business, with its principal office in Asheville, and that in that year it began business with the defendant bank; that, on 20 March, 1909, it was agreed between the parties that a line of credit should be allowed to plaintiff by defendant bank on different classes of paper discussed, but each item in each class be subject to approval by defendant bank, of $20,000, which line of credit on the various classes was, by agreement between the parties, extended to more than $30,000, through the period of the transactions between the parties, and it was part of the agreement that the defendant bank would accept such of the plaintiff's paper, as it approved of various classes, to the extent of the line of credit agreed upon from time to time, the plaintiff being required to pay 6 per cent interest for such money as it borrowed, and being required by the agreement to keep in the bank 20 per cent of the amount of the loans obtained from the bank on its customers' notes discounted, and on the personal loans. It is found that the plaintiff did not keep an average of 20 per cent, in the bank, as agreed to, up to the beginning of the month of June, 1909, but it is found that in consequence of said agreement the plaintiff did keep and maintain a balance of the money so borrowed, and attempted to keep 20 per cent, and the exact amount not being ascertainable from this record, the defendant's estimate of not more than 6 per cent is accepted by this court; and the court finds that as much as 6 per cent monthly average was kept in said

bank in consequence of said agreement up to the 1st of June, 1911, and by agreement between the parties, on the complaint of the bank that the average promised was not left, the defendant bank actually charged the interest upon the deficit, the amount of which, for the different periods there shown, is in the sum of $216.65. That this agreement to maintain 20 per cent balance on loans related to direct loans to the plaintiff on its own paper, and on customers' notes discounted, but did not relate to demand loans on assigned accounts.

3. That the plaintiff opened an account and began business with the defendant bank in March, 1909, and began to discount its customers' notes or paper, pursuant to an arrangement made at the time with the defendant bank, and continued same thenceforward until it closed its business dealings with the defendant in 1913.

4. That said plaintiff, beginning about 2 September, 1909, and continuing thenceforward until the close of its business dealings with the defendant bank, borrowed money from the defendant on its assigned invoices, or accounts receivable, as collateral security, from time to time, as its necessities required, and as shown in Exhibit A, as corrected by agreement of the parties, and agreed to pay, and did pay, and the defendant bank did receive from the plaintiff, in addition to the six per cent charged for the loan of the money, a charge of one (1) per cent upon 50 per cent of the face value of said accounts receivable, or invoices, so assigned, handled, or collected by said bank, and continued to make and collect this additional charge from the date hereinbefore in this section mentioned, until January, 1910, when the charge was reduced to two-thirds of one per cent upon the face value of said assigned accounts receivable, or invoices, and said loans thenceforward were limited in amount to two-thirds of the face value of said accounts; that on a large portion of the transactions, as shown by Exhibit "A," to which this paragraph relates, the charge which was originally 1 per cent on the face of the invoice, and later two-thirds of 1 per cent, and was often greater than the interest expected or received; that the accounts were, in at least 90 per cent of the cases, promptly paid, were generally known and easily ascertained to be solvent, were guaranteed by plaintiff, and required very little if any more attention than collateral loans upon other classes of paper; and said agreement was proposed by the plaintiff in order to get the accommodation of the loan, and the loan was granted because of the profit derived from the charge of the commission, which was an unreasonable charge, and was an attempted device by which the bank would receive a greater than 6 per cent income from its loans as the condition for making such loans; that there were almost daily transactions in the nature of loans or credits allowed by the bank, taken up by substituted notes, substituted demand notes on customers' paper, all collateral, and

on discounted customers' paper, all covered by the agreement as to the line of credit, which line of credit agreed upon from time to time was kept exhausted by the plaintiff, transactions being of practically daily frequence, each party keeping the whole of the accounts, the mutual items being so interlocked as to make them practically inseparable. So that it was, and was assumed to be, an open mutual running account from 1 March, 1909, to the close of the transactions, the final settlement and payments being on 4 November, 1914.

There are other findings, but those set out are sufficient to a proper understanding of the legal questions presented.

The action was commenced more than two years after the date of most of the items in the account, and within less than two years from the date of the final settlement.

His Honor held that the account between plaintiff and defendant was a mutual running account, and that the statute did not begin to run until the last payment made by defendant.

*R. S. McCall, Pless & Winborne, and Murray Allen for plaintiff.*
*Bourne & Parker and Theo. F. Davidson for defendant.*

ALLEN, J. The findings of fact by the court are conclusive upon us as there is no exception that there is no evidence to support them (*Eggers v. Stanbury,* 177 N. C., 85), and they make out a case of usury against the defendant.

It is found as a fact that the charge of commissions of 1 per cent at one time, and two-thirds of 1 per cent at another "was an attempted device by which the bank would receive a greater than 6 per cent income from its loans as the conditions for making such loans," which comes directly within the authority of *Arrington v. Goodrich,* 95 N. C., 467, which holds that a commission charged for the purpose of securing more than 6 per cent interest was usurious, and the agreement requiring the plaintiff to keep on deposit a part of the money advanced, or to pay interest on the deficiency, in addition to a charge of 6 per cent interest, is expressly condemned in *Bank v. Wysong and Miles Co.,* 177 N. C., 388, where the principle is fully discussed with ample citation of authority in support of the opinion.

The remaining question is as to the correctness of the ruling on the statute of limitations, and this also is practically foreclosed against the defendant by the finding that there were "almost daily transactions in the nature of loans or credits allowed by the bank, taken up by substituted notes, substituted demand notes on customers' paper as collateral, and on discounted customers' paper, all covered by the agreement as to the line of credit, which line of credit agreed upon from time to time was kept exhausted by the plaintiff, transactions being of practically

daily frequency, each party keeping the whole of the accounts, the mutual items being so interlocked as to make them practically inseparable. So that it was, and was assumed to be, an open mutual running account from 1 March, 1909, to the close of the transactions, the final settlement and payments being on 4 November, 1914."

This brings the accounts between the plaintiff and defendant within the definition of a mutual running account as contained in *Hollingsworth v. Allen,* 176 N. C., 630, and other cases, and the statute of limitations does not begin to run on such accounts except from the last item in the account. *Green v. Caldcleugh,* 18 N. C., 323; *Stokes v. Taylor,* 104 N. C., 399; *Stancell v. Burgwyn,* 124 N. C., 71.

The principle is applicable to statutes of limitations generally, and, as there is no exception of an action to recover the penalty and as the right to bring such action is controlled by our statute of limitations (Rev., 396, subsec. 2), which provides that "an action to recover the penalty for usury" shall be brought within two years, it must be held that it applies to such actions, and it has been so held in other jurisdictions.

In Webb on Usury, sec. 209, the course of dealing between the plaintiff and defendant is described with much accuracy, and the conclusion reached that the lapse of time is not a bar. The author says: "In all cases regard must be had for the statute of limitations, which, as will be seen, upon subsequent pages, may determine all the rights of the parties to the contract, including the debtor's right to apply his payments. But neither lapse of time nor the statute of limitations will affect a case where the transaction was a continued one. 'New dealings, new advances, new securities for money, mortgages upon the estate of the complainant, and some of the claims outstanding and unsettled, at the time of filing the bill, when taken together make out a case which neither time nor the statute of limitations can affect."

Again, in *Slover v. Bank,* 115 Tenn., 347: "The bill was filed to collect usury upon a series of transactions on the 20th of March, 1905. It charges that the last usurious interest was paid on the 1st of March, 1901, and that there was a final settlement between the parties on the 4th of March, 1902, of all the transactions between them involving the usury.

"There was a demurrer filed, relying upon the statute of two years and the statute of six years; and it is insisted in this court that the demurrer should have been sustained on the ground that the action was barred by the statute of two years.

"There being a series of usurious transactions, the statute of limitations would not begin to run until these transactions were closed; and a settlement was made between the parties on the 4th of March, 1902."

In *Pickett v. Bank,* 32 Arkansas, 347 (at page 355), it appeared that the firm of Wormley, Joy & Company, of which Pickett was a member,

had opened a bank account with the Merchants National Bank of Memphis, with whom they had a running account for moneys loaned and checks paid, and credits for deposits and payments. The court held that this account, which commenced in 1866 and continued to 1868, constituted but one transaction. In the opinion in this case it is said: "So held under like circumstances by the Supreme Court of Tennessee in the case of *Weatherhead v. Boyers,* 7 Yerger, 545, and *Poyers v. Boddie,* 3 Hum., 666. In the first mentioned case *Mr. Justice Peck* said: 'The transaction was a continued one, new dealings, new advances, new securities for money, . . . when taken, make a case where neither time nor the statute of limitation can have effect.' The defense was usury, the precise question as to the time when the statute bar commenced, the transaction of advancements, payments, and settlements, extended for several years, and was held to be one transaction."

We therefore conclude that the cause of action is not barred.

Affirmed.

Brown, J., dissenting: I cannot agree with my associates upon the judgment rendered, as I am of the opinion that the penalties recovered in this case are barred by the statute of limitations.