Otis BARTLETT, C. K. Graham and Claude Lanning, Respondents,

v.

L. L. DE GRAFFENREID and Noma Ann DeGraffenreid, Appellants.

No. 22585.

Kansas City Court of Appeals.

, Missouri.

Oct. 1, 1957.

Fields & Low, John A. Honssinger, John F. Low, Lebanon, for appellant.

Harry H. Kay, Eldon, for respondent.

HUNTER, Judge.

This is an appeal by defendants from a judgment for plaintiffs who sued for $1,447.06 for breach of contract and recovered $1,104.16.

Plaintiffs Otis Bartlett, C. K. Graham and Claude Lanning alleged in their petition that in October 1953, they began the construction of a septic tank and filter bed, referred to as the system, on property which they leased from the defendants L. L. DeGraffenreid and Noma Ann De-Graffenreid (his sister), and from Gail and Oma Kidwell; that after construction of the system began defendants and the Kidwells orally agreed to pay ⅝ of the cost of its construction if the Kidwells and defendants were allowed to connect five other buildings to the system; that plaintiffs completed construction of the system and the five buildings belonging to the defendants and the Kidwells were connected thereto; that the total cost of construction was $3,472.99 and that the Kidwells had paid ⅓ of ⅝ of the cost but the defendants had refused to pay the $1,447.06 they owed.

Defendants denied the allegations of plaintiffs' petition and alleged that plaintiffs negligently constructed the system which was faulty and unworkable, and that the total cost was excessive because of mismanagement and negligence.

At the trial certain facts developed which are relatively undisputed. In the late spring of 1953, plaintiffs Graham and Lanning with Red Bartlett operated businesses at Lake Ozark, Missouri, upon lands owned by and leased from defendants and Gail and Oma Kidwell. Graham operated a tavern; Bartlett, a cafe; and Lanning a liquor store, all adjoining. Plaintiffs were obligated under their leases to provide their own sewage disposal system. The septic tank which served the buildings the three occupied was condemned by the State Board of Health, and they employed Gail Kidwell to build them a new septic tank in accordance with plans furnished by the State Board of Health. The three of them contributed money which was deposited in a special bank account against which Gail Kidwell drew checks to pay the cost of the construction of the system. Some time later plaintiff, Otis Bartlett, purchased the business of his brother, Red Bartlett, for the amount which Red Bartlett had contributed to the septic tank fund.

About April 1954, plaintiffs were advised by agents of the State Board of Health that by using a new spray nozzle arrangement on the septic tank system they were building only one-half of the originally planned filter bed would be needed, and that the resultant system would be adequate to take care of the five adjoining properties belonging to the defendants and the Kidwells. Plaintiffs contracted the Kidwells and defendants to discuss whether or not they were interested in connecting their five properties to the system. As conceded by counsel for all parties, it is undisputed that defendants, along with Gail Kidwell and his wife, agreed at this April 1954, meeting to each pay ⅓ of ⅝ of the total cost of construction of the system. This was for the reason that there were eight properties involved, with defendants and the Kid-

wells owning five and the plaintiffs leasing the other three properties. Defendants, of course, were to have their properties attached to the system. Thereafter, L. L. DeGraffenreid participated in the construction work, built the partition wall in the filter bed, and laid certain of the lines of the system. L. L. DeGraffenreid is a brother of defendant Noma Ann DeGraffenreid and of Mrs. Oma Kidwell. They had received title to the mentioned properties by deed from their father. Shortly after the April, 1954, meeting Gail and Oma Kidwell filed a partition suit against defendants which involved the land upon which the system was built.

As indicated by defendants' answer and as shown by the evidence, when the buildings were connected up to the system and the system was put into operation the tank and filter bed showed leaks. Substantial additional work was done on them to remedy this condition. According to plaintiffs' evidence the cost of this additional work was approximately eight hundred dollars, and this cost is included by plaintiffs in their claim against defendants.

After the system was put into operation a second meeting was called between plaintiffs and defendants to discuss payment for the cost of the system. At this meeting defendants refused to pay any part of the costs.

On this appeal defendants assert the trial court erred in the giving of Instruction No. 1, and in refusing to allow defendants to interrogate respondents about the interest of Gail Kidwell in the lawsuit to show he was an indispensable party.

Instruction No. 1, among other things, advised the jury that if they found that about October 1953, the defendants and Gail and Oma Kidwell agreed with plaintiffs that if plaintiffs would allow them to connect their buildings to a septic tank and filter bed being constructed and to be constructed by plaintiffs, defendants and Kidwells would pay ⅝ of the cost of the construction of the septic tank and filter bed, and if they further found that plaintiffs caused the septic tank and filter bed to be constructed and allowed defendants and Kidwells to connect their buildings to the septic tank and filter bed after it was constructed then they should find the issues for plaintiffs.

Defendants particular complaint is that the meeting was held in April 1954, not October 1953, and that the instruction was therefore erroneous. It is admitted by plaintiffs that the meeting referred to was held in April 1954, and that the construction of the system began in October 1953. Plaintiffs say that if the use of the words "about October 1953" in the instruction is error, it is harmless error.

■■■ The factual background for defendants' contention is as follows: During the trial defendants contended that when the April, 1954, meeting was held the system was practically completed, and that all that remained to be done was to tie in the buildings and buy the sand. Defendant L. L. DeGraffenreid's testimony was to the general effect that plaintiffs informed them at the April, 1954, meeting that approximately $1,100 had been spent on the system at that time and that the total cost would be about $1,200. Defendant L. L. DeGraffenreid on one occasion during the trial testified to the effect that what he and his sister Oma Kidwell, thought they were agreeing to was that they would pay ⅝ of the sum of $1,200 for the privilege of attaching their buildings to the sewage system. Defendants also undertook to show that the cost of the system was exorbitant, particularly in that it so greatly exceeded the $1,200 figure. However, in the final submission of the case to the jury, defendants failed to instruct on an issue of excessive cost, and abandoned that defense. Further, as defendants in this brief now concede the fact to be, and in accordance with all the other testimony on that subject, the agreement made at the April, 1954, meeting was that defendants with the

Kidwells agreed to pay ⅝ of the total cost of construction of the system and that each defendant's share was ⅓ of that ⅝. Thus, the only factual issue was what was the cost of the construction of the system. The date of the contract was not a disputed fact and was well-established by all the testimony. Under the circumstances, it is very doubtful that the jury was misled as to the correct date by the words "about October 1953." Even so, as the particular date of the contract had nothing to do with determining the amount of the construction costs, the misstatement of it or failure to state it more precisely did not result in any prejudice to the defendants. The rule is well-settled that in order to reverse a judgment rendered in accordance with the jury's verdict the Appellate Court is required to find not only that error was committed by the trial court but that such error materially affected the merits of the action. Sec. 512.160(2) RSMo 1949, V.A.M.S., Cieslinski v. Clark, Mo. App., 223 S.W.2d 139; De Winter v. Lashley, Mo.App., 274 S.W.2d 40; Divelbiss v. Phillips Petroleum Co., Mo.App., 272 S.W.2d 839; Duffy v. Rohan, Mo.Sup., 259 S.W.2d 839; Smith v. St. Louis Public Service Co., Mo.Sup., 277 S.W.2d 498.

■ Defendants contend that Instruction No. 1 was erroneous for an additional reason. They say that while defendants, under the terms of the contract, were liable for ⅔ of ⅝ of the "cost of construction" the latter part of the instruction advised that the verdict could not exceed the sum of $1,447.06 which figure included not only construction costs but also costs of repair, and was therefore erroneous.

The complained of portion of Instruction No. 1 reads as follows:

"You are further instructed that if you find the issues in favor of the plaintiffs you should assess the amount of their recovery at an amount equal to two-thirds of five-*eights* of the reasonable cost of the construction of the septic tank and filter bed mentioned in evidence. Your verdict, however, if you find in favor of the plaintiffs, should not exceed the amount of $1,447.06, which is the amount sued for by the plaintiffs. In naming the foregoing amount the Court does not mean to indicate that you should find for plaintiffs for that amount or for any amount, and you should not be influenced in any way by the fact that said amount is mentioned in this instruction, but said amount is mentioned solely and only for the purpose of informing you of the amount beyond which you cannot in any event go if you find the issues for the plaintiffs."

Defendants also say this portion of the instruction is erroneous because although plaintiffs pleaded $3,472.99 had been spent in constructing the system they never offered any evidence to show that sum was the cost of construction; hence, to mention plaintiffs were suing for $1,447.06 (⅔ to ⅝ thereof) and their verdict was not to exceed that figure was erroneous since the latter mentioned figure was not based on evidence. We do not see how the instruction could convey to the jury any suggestion that they could properly return a verdict that included repair costs as opposed to construction costs. The instruction clearly limits recovery to "an amount equal to ⅔ of ⅝ of the reasonable cost of the *construction* of the septic tank and filter." If defendants felt the jury needed further guidance as to the meaning of the word "construction" they could have submitted an instruction defining its meaning. They apparently chose not to do so. Further, we have carefully examined the transcript and find that there was ample evidence from which the jury could have found that the total cost of construction was at least $3,472.99, and that defendants' proportionate share thereof was $1,447.06.

■ Implicit in defendants contention that there was no evidence to support the mentioned $1,447.06 figure is their assertation that the jury could not properly consider certain items totaling approximately $800 resulting primarily from changes made in the filter bed to stop it from leaking and

the cost of sealing up or otherwise correcting leaks in other parts of the system that were disclosed when it was put into operation. Defendants would have us say as a matter of law that these expenses were not for construction of the system but were repairs made after the construction of the system was completed, and thus not included in their agreement to pay $1/3$ of $5/8$ of the cost of the construction of the system. This we are unwilling to do. Certainly a reasonable view of what the parties contemplated and intended by their agreement of April 1954, was the construction of a system that worked satisfactorily. The questioned work done on the filter bed and septic tank in our view was a part of the construction work necessary to complete a workable system. It merely corrected leaks that were disclosed, and it appeared necessary to a satisfactory completion of a workable system. It was not for repairs made to a system that had been satisfactorily completed and worked properly but thereafter for some reason a need for repairs arose. Cf. Harvey v. Switzerland General Insurance Co., Limited, Mo.App., 260 S.W.2d 342, 344; Larson v. Crescent Planing Mill Co., Mo.App., 218 S.W.2d 814; Sharp v. Quincy, O. & K. C. Ry. Co., 139 Mo.App. 525, 123 S.W. 507.

Lastly, defendants say the trial court erred in refusing to allow them to question plaintiffs about the interest, if any, of Gail Kidwell in the lawsuit, to show he was an indispensable party.

During the course of the construction of the system plaintiffs Graham and Bartlett together with Kidwell had borrowed $1,200 from a bank to obtain funds to pay bills owed on the system. Kidwell's uncontroverted testimony was that he signed the $1,200 note as an accommodation to plaintiffs to assist them to get the money from the bank. Kidwell was interrogated at great length by plaintiffs' counsel as to any possible interest he might have in the suit. He testified he had no interest in plaintiffs' recovery from defendants, except by implication as it might assist plaintiffs in paying off this note. He does not claim that defendants owe him anything. Examination of the transcript discloses that the trial court did permit defendants to question plaintiffs about Kidwell's interest in the case, except as to certain questions which the trial court deemed to call for plaintiffs legal conclusions, and not for evidentiary facts. We find no error in the trial court's various rulings on the subject.

Further, it is the established rule that failure to raise a claim of defect of parties by motion or by answer or reply constitutes a waiver thereof. Sec. 507.040 RSMo 1949, V.A.M.S.; 42 V.A.M.S. Supreme Court Rule 3.06; Ray v. Nethery, Mo.Sup., 255 S.W.2d 817, 819; Casper v. Lee, 362 Mo. 927, 245 S.W.2d 132, 139. This the defendants failed to do, and by such failure they waived their claimed error.

For the reasons given, the judgment of the trial court is affirmed.

All concur.