Russell GRUNDEL, Sr., and Russell Grundel, Jr., Respondents,

v.

BANK OF CRAIG, a corporation, Appellant.

No. KCD 26427.

Missouri Court of Appeals, Kansas City District.

Oct. 7, 1974.

Motion for Rehearing and/or Transfer Denied Nov. 4, 1974.

Rupert Usrey, Oregon (Eiser & Usrey, Oregon, of counsel), for appellant.

Bernard W. Gorman, Tarkio, for respondents.

Before PRITCHARD, P. J., and WASSERSTROM and SOMERVILLE, JJ.

PRITCHARD, Presiding Judge.

Appellant Bank undisputedly imposed this condition upon respondents: That it would be necessary, in order for the Bank to continue to extend credit, that a loan in the amount of $5,000.00 would have to be made to him at 8% interest, and that the proceeds of the loan would have to be deposited by him in a non-interest bearing certificate of deposit with the Bank. The Bank states in its brief that it does not contend that this transaction was proper, and concedes that the respondents "are entitled to a refund of the interest paid on this $5,000.00 note."

The evidence tends to show and the court found that the above condition was imposed in January, 1969. A $5,000.00 note dated July 25, 1969, was in evidence, but Russell Grundel, Jr., testified that it was a renewal of the original note for the same amount executed on January 25, 1969. The court found that during the course of dealings of respondents and the Bank after January 25, 1969, to May 21, 1971, a total of $3,125.76 interest was paid by respondents; and that they were entitled to recover twice the amount paid, or $6,251.52, under the usury statute, § 362.380(1), RSMo 1969, V.A.M.S. The principal issue is, then, whether the interest exacted by reason of the execution of the January, 1969, $5,000.00 note, and the retention by the Bank of its proceeds on a non-interest bearing certificate of deposit, can be applied only to it; or whether the excessive interest exacted extends to and taints with usury all subsequent borrowings of respondents.

The Bank contends that since, after some colloquy, the court found that $40,000.00 was borrowed by respondents, and, therefore, $3,125.76 interest on that amount at 8% per annum could not be usurious. It is of no consequence that the court found $40,000.00 to have been borrowed. By independent computation of the interest received by the Bank from January 25, 1969, to the time respondent ceased doing business with it, at 8% per annum (as all notes provide), the amount received was within about $15.00 of a total of 8% on all loans for the time each loan was outstanding. It follows that if the $645.56 interest received on the $5,000.00 note applies to subsequent borrowings over about 14 months time, the amounts of interest received exceeded the legal rate.

The rule is stated in 45 Am.Jur.2d, Interest and Usury, § 113, p. 100: "If as a condition of making a loan the borrower is required to leave part of the money on deposit with the lender, the transaction is usurious if the interest paid for the loan amounts to more than legal interest on the sum actually available for the use of the borrower." Annotation 14 A.L.R. 1422, 1423 (II); see also 91 C.J.S. Usury § 35c., p. 615. In this case there is no question that the $5,000.00 proceeds placed on certificate of deposit was not ever available to respondent. Indeed the evidence shows that the Bank retained the certificate, and that when respondents desired to pay off their final indebtedness, it could not be found and the Bank demanded a bond from them. The certificate was later found by the Bank and respondents were able to close their dealings with it.

In Federal Mortgage Co. v. State Nat. Bank, 254 S.W. 1002 (Tex.Civ.App.1923), the cross-appellants McElvany owned certain lands with liens upon it, including one of H. P. Drought, Trustee. Federal Mortgage sought to take over the Drought lien but was unable to do so, and complained to the McElvanys that they were forced to hold a second lien which was forbidden by its charter. It was arranged that a $19,000.00 loan would be made, $15,000.00 of which would be paid to Federal Mortgage for the balance of the McElvany loan and $4,000.00 would be paid to general

agents and officers of the two companies as brokerage fees for trouble in handling the transaction and for consummating it. The McElvanys pleaded that the $4,000.00 included in the note was usurious, and this was found by the jury, and so held by the court on appeal, the acts of the agents being the acts of appellant in appropriating the $4,000.00 for themselves. "Though it may not have been usurious in its inception, if appellants, by the use of the note and their construction of the contract, handled the transaction so as to net them more than 10 per cent for the use of their money, it thereby became usurious. Shear Co. v. Hall (Tex.Com.App.) 235 S.W. 195." (254 S.W. 1005[3].) In Eldred v. Williamson, 33 Ill.App.2d 10, 178 N.E.2d 414[5] (1961), although the facts do not appear, it was said, "Evidence was sufficient to support defense of usury in mortgage foreclosure action, predicated upon alleged lender's retention of sum as commission over and above legal rate of interest." Williamson v. Clark, 120 So.2d 637 (Fla.App.1960), held that a mortgage broker, acting as the mortgagee's agent in arranging loans and exacting fees, had willfully and knowingly subjected the sums loaned to forfeiture under the usury statute. The facts were that upon execution of the mortgage and note, $12,854.70 was not credited to any account for the defendants, in contrast to the usual construction loan. "Although 10% interest was charged from the time of execution, the funds were in no way distinguished, earmarked or set aside for the borrowers. Rather, the major part of these funds were retained by the lenders for their own use, and they were mingled with the other resources of these lenders." In Penziner v. West American Finance Co., et al., 133 Cal.App. 578, 24 P.2d 501, 506[18–21], (1st Dist. 1933), the court held that a demurrer was improperly sustained on this statement: "[B]ut if, as a condition of the loan, the borrower is required to leave part with the lender, interest in excess of the legal rate on sum actually available is usurious. Note, 12 A.L.R. 1422. Here, as the appli-

cation provided that the loan was only available in progress installments, and the entire sum was not held subject to plaintiff's order, and an intent to evade the law is alleged, the above rule [39 Cyc. 959] is applicable." (Brackets added.)

Two cases from North Carolina speak on the basic issue presented. In Planters' Nat. Bank v. Wysong & Miles Co., 177 N. C. 380, 99 S.E. 199 (1919), the bank sued for the amount of three notes due it, and the defendant admitted the execution of the notes, but alleged that each was one of a series and that they were usurious. Defendant asserted a counterclaim alleging that the three notes were renewals of notes from 1908 until 1917, and that various sums were borrowed by it in the interim and the bank retained 20% of the principal on all notes while charging full 6% interest on the face amount of the loans. The defendant cross-appealed from a denial of a recovery of usury on the serial notes except those in suit. The court held that defendant could have the benefit of forfeiture of interest but not the penalty under the then decisions [see John R. Alley & Co., v. Federal Nat. Bank, 124 F.2d 995, 997[3] (C.A. 10th 1942)], construing the federal statute, as applied to national banks (now 12 U.S.C.A. § 86), by way of a counterclaim. The court held that the transactions were usurious, "The usury is plain and palpable, and there can be no doubt of the intent, on the part of the bank, to violate the law against the payment of excessive interest, or usury." And in citing analogous cases on usury, the court quoted extensively from East River Bank v. Hoyt, 32 N.Y. 119, 126 (1865), where $500.00 borrowed, upon which interest was paid, was retained by the lender, " 'Assuming these facts to be true, it presents a case of bold, unmitigated violation of the statute in its letter and spirit. If the statute prohibiting usury can be evaded by such a subterfuge as has been offered in this case, it has become a dead letter, and had better be repealed at once. By such a contrivance, an individual or a bank, in the loan of one-half their capital, may draw interest

upon the whole. The device in this case lacks even the merit of ordinary skill in its consummation; it is an act of cupidity and extortion, that is not provided with even the decencies of a cloak to cover its nudity.'" (99 S.E. 203). See also English Lumber Co. v. Wachovia Bank & Trust Co., 179 N.C. 211, 102 S.E. 205 (1920).

The intent of the Bank here is no different than in the Planters case and other cases above referred to. That intent is to evade the law, and as expressed by the officer of the Bank to Russell Grundel, Jr., the intent extends to all the lines of credit furnished to respondents. According to Russell, he was told this by the Bank's officer: "A Well, I was—I went down to the bank that day and I was by myself, and Wayne told me at that time we was getting into a tight money situation, interest rates had went up, and he told me he said, 'We will go along with you on what you need and what you owe us either, but we have got to have more than eight percent.' He said, 'This eight percent is the limit but we have to have more than eight percent.' In fact, insurance companies and so forth were pulling out of real estate loans and stuff in the State of Missouri then, and he told me, he said, 'If you will borrow $5,000.00 at eight percent, you loan it back to us for zero interest in the form of a Certificate of Deposit, and as you pay your debts down we will drop this $5,000.00 until—if you get down to where you don't owe anything they would eliminate it, and either do that or else have another place to bank,' and it was awful hard at that time, I don't think you could have found a place, found a home for that money we had borrowed, so I went along with him and done that." Under this evidence the court did not err in concluding that the initial usurious transaction extended to all subsequent loans.

The Bank says that the court erred in finding that respondents were engaged in a partnership. This evidence supports the finding that respondents were engaged in a form of joint enterprise for farming purposes. Although there was no joint ownership of land, both respondents testified that the farming business was carried on without any division of the land, and livestock was placed on all fields, and that grain was stored on all lands or at an elevator. There was never any attempt to divide the property in kind. Importantly, the bank regarded respondents as being engaged in a common business enterprise. It required a continuing agreement signed by both respondents whereby each guaranteed the payment of funds borrowed by the other on an individual signature; financial statements given to the Bank listed property belonging to both respondents, and the Bank's officer testified that the property he saw on the farm was considered by him to be owned by respondents. It is of no consequence that there was no partnership income tax return filed, or that respondents filed individual returns only, as the evidence shows. The funds derived from the enterprise were definitely used by respondents for their common purpose in the farming operations. A formal agreement need not be shown to establish the relationship. See Neville v. D'Oench, 34 S.W.2d 491, 503 (Mo.1930), and generally 48 C.J.S. Joint Adventurers § 1, p. 801 et seq.

Lastly, the Bank claims that there was a defect in parties plaintiff because answers to interrogatories and the testimony of Russell Grundel, Jr., showed that respondents' wives were members of the partnership. Respondents' spouses were, of course, not joined as plaintiffs. If, in fact, they were members of the partnership or joint enterprise, they should have been joined under old Rule 52.04, V.A.M.R. in force at the time this action was filed and tried (now Rule 52.04 is new, effective December 1, 1972). The Bank had knowledge by reason of the answers of respondents to interrogatories *prior to trial* that there might be other parties plaintiff who might have an interest in the subject matter of

the action. Yet, at no time, either before, during or after trial, did the Bank move to dismiss the petition or ask for judgment on the ground that there was a defect of parties plaintiff. Buford v. Lucy, 328 S.W.2d 14 (Mo.1959), and the Bank's cited case, Wittels v. Dubinsky, 343 S.W.2d 644 (Mo. App.1961), are not controlling because in both cases there were after-trial motions calling the defect to the attention of the court and asking for appropriate relief. In the posture presented, the matter must be deemed to have been waived. Bartlett v. De Graffenreid, 305 S.W.2d 906, 910 [5, 6] (Mo.App.1957), and cases cited. It is apparent also that the alleged omitted parties plaintiff here could not relitigate the issue and possibly subject the Bank to a double recovery under the observation of Buford v. Lucy, loc. cit., 328 S.W.2d 14, 19[6], because the two-year limitation period of § 362.380, if asserted, would bar a claim of recovery of the amount of interest paid because of usury.

■ The court computed the interest paid at $3,125.76 and doubled that amount for judgment under the penalty provision of the statute. The documentary evidence in the case, consisting of the Bank's records, show irrefutably that a total of $3,318.81 was paid to it after the imposition of the condition of maintaining the compensating balance, above held to be usurious. Under Rule 84.14, the matter may be corrected to "give such judgment as the court ought to give." See the analogous cases of Caen v. Feld, 371 S.W.2d 209, 214[13] (Mo.1963); and Allison v. Mountjoy, 383 S.W.2d 314, 321 (Mo.App. 1964), and cases there noted, especially Wheeler v. Cantwell, 140 S.W.2d 744 (Mo. App.1940).

The judgment appealed from is affirmed, but the case is remanded with directions to enter a new judgment in lieu thereof, in the corrected amount of $6,637.-62 and for costs.

All concur.